(Slip Opinion) OCTOBER TERM, 2012 1

NOTE: Where it is feasible, a syllabus (headnote) will be released, as is being done in connection with this case, at the time the opinion is issued. The syllabus constitutes no part of the opinion of the Court but has been prepared by the Reporter of Decisions for the convenience of the reader. See *United States* v. *Detroit Timber & Lumber Co.,* 200 U. S. 321, 337.

# SUPREME COURT OF THE UNITED STATES

Syllabus

## MCBURNEY ET AL. *v.* YOUNG, DEPUTY COMMISSIONER AND DIRECTOR, VIRGINIA DIVISION OF CHILD SUPPORT ENFORCEMENT, ET AL.

### CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT

No. 12–17.   Argued February 20, 2013—Decided April 29, 2013

Virginia's Freedom of Information Act (FOIA) grants Virginia citizens access to all public records, but grants no such right to non-Virginians.  Petitioners McBurney and Hurlbert, citizens of States other than Virginia, filed records requests under the Act.  After each petitioner's request was denied, they filed a 42 U. S. C. §1983 suit seeking declaratory and injunctive relief for violations of the Privileges and Immunities Clause and, in Hurlbert's case, the dormant Commerce Clause.  The District Court granted Virginia's motion for summary judgment, and the Fourth Circuit affirmed.

*Held*:

  1. Virginia's FOIA does not violate the Privileges and Immunities Clause, which protects only those privileges and immunities that are "fundamental."  See *Baldwin* v. *Fish and Game Comm'n of Mont.*, 436 U. S. 371, 382, 388. Pp. 3–12.

    (a) Hurlbert alleges that Virginia's FOIA abridges his fundamental right to earn a living in his chosen profession—obtaining property records on behalf of his clients.  While the Privileges and Immunities Clause protects the right of citizens to "ply their trade, practice their occupation, or pursue a common calling," *Hicklin* v. *Orbeck*, 437 U. S. 518, 524, the Court has struck down laws as violating this privilege only when they were enacted for the protectionist purpose of burdening out-of-state citizens.  See, *e.g.*, *Toomer* v. *Witsell*, 334 U. S. 385, 395, 397.  The Virginia FOIA's citizen/noncitizen distinction has a nonprotectionist aim. Virginia's FOIA exists to provide a mechanism

for Virginia citizens to obtain an accounting from their public offi-
cials; noncitizens have no comparable need.  Moreover, the distinc-
tion between citizens and noncitizens recognizes that citizens alone
foot the bill for the fixed costs underlying recordkeeping in the Com-
monwealth.  Any effect the Act has of preventing citizens of other
States from making a profit by trading on information contained in
state records is incidental.  Pp. 4–6.

(b) Hurlbert also alleges that Virginia's FOIA abridges the right
to own and transfer property in the Commonwealth.  The right to
take, hold, and dispose of property has long been seen as one of the
privileges of citizenship.  See, *e.g., Paul* v. *Virginia*, 8 Wall. 168, 180.
However, Virginia law does not prevent noncitizens from obtaining
documents necessary to the transfer of property.  Records—like title
and mortgage documents—maintained by the clerk of each circuit
court are available to inspection by any person.  Real estate tax as-
sessment records are considered nonconfidential and are often posted
online, a practice followed by the county from which Hurlbert sought
records.  Requiring a noncitizen to obtain records through the clerk's
office or on the Internet, instead of through a burdensome FOIA pro-
cess, cannot be said to impose a significant burden on the ability to
own or transfer property in Virginia.  Pp. 6–8.

(c) McBurney alleges that Virginia's FOIA impermissibly bur-
dens his access to public proceedings.  The Privileges and Immunities
Clause "secures citizens of one state the right to resort to the courts
of another, equally with the citizens of the latter state," *Missouri Pa-
cific R. Co.* v. *Clarendon Boat Oar Co.*, 257 U. S. 533, 535, but that
"requirement is satisfied if the nonresident is given access . . . upon
terms which . . . are reasonable and adequate for the enforcing of any
rights he may have, even though they may not be . . . the same in ex-
tent as those accorded to resident citizens," *Canadian Northern R.
Co.* v. *Eggen*, 252 U. S. 553, 562.  Virginia's FOIA clearly does not de-
prive noncitizens of "reasonable and adequate" access to Common-
wealth courts.  Virginia's court rules provide noncitizens access to
nonpriviledged documents needed in litigation, and Virginia law
gives citizens and noncitizens alike access to judicial records and to
records pertaining directly to them.  For example, McBurney utilized
Virginia's Government Data Collection and Dissemination Practices
Act to receive much of the information he had sought in his FOIA re-
quest.  Pp. 8–10.

(d) Petitioners' sweeping claim that the Virginia FOIA violates
the Privileges and Immunities Clause because it denies them the
right to access public information on equal terms with Common-
wealth citizens is rejected because the right to access public infor-
mation is not a "fundamental" privilege or immunity of citizenship.

The Court has repeatedly stated that the Constitution does not guarantee the existence of FOIA laws. See, *e.g., Los Angeles Police Dept.* v. *United Reporting Publishing Corp.*, 528 U. S. 32, 40. Moreover, no such right was recognized at common law or in the early Republic. Nor is such a sweeping right "basic to the maintenance or well-being of the Union." *Baldwin, supra*, at 388. Pp. 10–12.

2. Virginia's FOIA does not violate the dormant Commerce Clause. The "common thread" among this Court's dormant Commerce Clause cases is that "the State interfered with the natural functioning of the interstate market either through prohibition or thorough burdensome regulation." *Hughes* v. *Alexandria Scrap Corp.*, 426 U. S. 794, 806. Virginia's FOIA, by contrast, neither prohibits access to an interstate market nor imposes burdensome regulation on that market. Accordingly, this is not properly viewed as a dormant Commerce Clause case. Even shoehorned into the Court's dormant Commerce Clause framework, however, Hurlbert's claim would fail. Insofar as there is a "market" for public documents in Virginia, it is a market for a product that the Commonwealth has created and of which the Commonwealth is the sole manufacturer. A State does not violate the dormant Commerce Clause when, having created a market through a state program, it "limits benefits generated by [that] state program to those who fund the state treasury and whom the State was created to serve." *Reeves, Inc.* v. *Stake*, 447 U. S. 429, 442. Pp. 12–14.

667 F. 3d 454, affirmed.

ALITO, J., delivered the opinion for a unanimous Court. THOMAS, J., filed a concurring opinion.

NOTICE: This opinion is subject to formal revision before publication in the preliminary print of the United States Reports. Readers are requested to notify the Reporter of Decisions, Supreme Court of the United States, Washington, D. C. 20543, of any typographical or other formal errors, in order that corrections may be made before the preliminary print goes to press.

# SUPREME COURT OF THE UNITED STATES

No. 12–17

MARK J. MCBURNEY, ET AL., PETITIONERS *v.* NA-
THANIEL L. YOUNG, DEPUTY COMMISSIONER
AND DIRECTOR, VIRGINIA DIVISION OF
CHILD SUPPORT ENFORCEMENT, ET AL.

ON WRIT OF CERTIORARI TO THE UNITED STATES COURT OF
APPEALS FOR THE FOURTH CIRCUIT

[April 29, 2013]

JUSTICE ALITO delivered the opinion of the Court.

In this case, we must decide whether the Virginia Freedom of Information Act, Va. Code Ann. §2.2–3700 *et seq.*, violates either the Privileges and Immunities Clause of Article IV of the Constitution or the dormant Commerce Clause. The Virginia Freedom of Information Act (FOIA), provides that "all public records shall be open to inspection and copying by any citizens of the Commonwealth," but it grants no such right to non-Virginians. §2.2–3704(A) (Lexis 2011).

Petitioners, who are citizens of other States, unsuccessfully sought information under the Act and then brought this constitutional challenge. We hold, however, that petitioners' constitutional rights were not violated. By means other than the state FOIA, Virginia made available to petitioners most of the information that they sought, and the Commonwealth's refusal to furnish the additional information did not abridge any constitutionally protected privilege or immunity. Nor did Virginia violate the dor-

mant Commerce Clause. The state Freedom of Informa-
tion Act does not regulate commerce in any meaningful
sense, but instead provides a service that is related to
state citizenship. For these reasons, we affirm the deci-
sion of the Court of Appeals rejecting petitioners' constitu-
tional claims.

I

Petitioners Mark J. McBurney and Roger W. Hurlbert
are citizens of Rhode Island and California respectively.
McBurney and Hurlbert each requested documents under
the Virginia FOIA, but their requests were denied because
of their citizenship.

McBurney is a former resident of Virginia whose ex-wife
is a Virginia citizen. After his ex-wife defaulted on her
child support obligations, McBurney asked the Common-
wealth's Division of Child Support Enforcement to file a
petition for child support on his behalf. The agency com-
plied, but only after a 9-month delay. McBurney attrib-
utes that delay to agency error and says that it cost him
nine months of child support. To ascertain the reason for
the agency's delay, McBurney filed a Virginia FOIA re-
quest seeking "all emails, notes, files, memos, reports,
letters, policies, [and] opinions" pertaining to his family,
along with all documents "regarding [his] application for
child support" and all documents pertaining to the han-
dling of child support claims like his. App. in No. 11–1099
(CA4), p. 39A. The agency denied McBurney's request on
the ground that he was not a Virginia citizen. McBurney
later requested the same documents under Virginia's Gov-
ernment Data Collection and Dissemination Practices Act,
Va. Code Ann. §2.2–3800 *et seq.*, and through that re-
quest he received most of the information he had sought
that pertained specifically to his own case. He did not,
however, receive any general policy information about how
the agency handled claims like his.

Hurlbert is the sole proprietor of Sage Information Services, a business that requests real estate tax records on clients' behalf from state and local governments across the United States. In 2008, Hurlbert was hired by a land/title company to obtain real estate tax records for properties in Henrico County, Virginia. He filed a Virginia FOIA request for the documents with the Henrico County Real Estate Assessor's Office, but his request was denied because he was not a Virginia citizen.

Petitioners filed suit under 42 U. S. C. §1983, seeking declaratory and injunctive relief for violations of the Privileges and Immunities Clause and, in Hurlbert's case, the dormant Commerce Clause. The District Court granted Virginia's motion for summary judgment, *McBurney* v. *Cuccinelli*, 780 F. Supp. 2d 439 (ED Va. 2011), and the Court of Appeals affirmed, 667 F. 3d 454 (CA4 2012).

Like Virginia, several other States have enacted freedom of information laws that are available only to their citizens. See, *e.g.,* Ala. Code §36–12–40 (2012 Cum. Supp.); Ark. Code Ann. §25–19–105 (2011 Supp.); Del. Code Ann., Tit. 29, §10003 (2012 Supp.); Mo. Rev. Stat. §109.180 (2012); N. H. Rev. Stat. Ann. §91–A:4 (West 2012); N. J. Stat. Ann. §47:1A–1 (West 2003); Tenn. Code Ann. §10–7–503 (2012). In *Lee* v. *Minner*, 458 F. 3d 194 (2006), the Third Circuit held that this feature of Delaware's FOIA violated the Privileges and Immunities Clause. We granted certiorari to resolve this conflict. 568 U. S. \_\_\_ (2012).

## II

Under the Privileges and Immunities Clause, "[t]he Citizens of each State [are] entitled to all Privileges and Immunities of Citizens in the several States." U. S. Const., Art. IV, §2, cl. 1. We have said that "[t]he object of the Privileges and Immunities Clause is to 'strongly . . . constitute the citizens of the United States [as] one peo-

ple,' by 'plac[ing] the citizens of each State upon the same
footing with citizens of other States, so far as the ad-
vantages resulting from citizenship in those States are
concerned.'" *Lunding* v. *New York Tax Appeals Tribunal*,
522 U. S. 287, 296 (1998) (quoting *Paul* v. *Virginia*, 8
Wall. 168, 180 (1869)). This does not mean, we have
cautioned, that "state citizenship or residency may never
be used by a State to distinguish among persons." *Bald-
win* v. *Fish and Game Comm'n of Mont.*, 436 U. S. 371,
383 (1978). "Nor must a State always apply all its laws or
all its services equally to anyone, resident or nonresident,
who may request it so to do." *Ibid.* Rather, we have long
held that the Privileges and Immunities Clause protects
only those privileges and immunities that are "fundamen-
tal." See, *e.g., id.*, at 382, 388.

Petitioners allege that Virginia's citizens-only FOIA
provision violates four different "fundamental" privileges
or immunities: the opportunity to pursue a common call-
ing, the ability to own and transfer property, access to the
Virginia courts, and access to public information. The first
three items on that list, however, are not abridged by the
Virginia FOIA, and the fourth—framed broadly—is not
protected by the Privileges and Immunities Clause.

A

Hurlbert argues that Virginia's citizens-only FOIA pro-
vision abridges his ability to earn a living in his chosen
profession, namely, obtaining property records from state
and local governments on behalf of clients. He is correct
that the Privileges and Immunities Clause protects the
right of citizens to "ply their trade, practice their occupa-
tion, or pursue a common calling." *Hicklin* v. *Orbeck*, 437
U. S. 518, 524 (1978); *Supreme Court of N. H.* v. *Piper*, 470
U. S. 274, 280 (1985) ("'[O]ne of the privileges which the
Clause guarantees to citizens of State A is that of doing
business in State B on terms of substantial equality with

the citizens of that State'"). But the Virginia FOIA does not abridge Hulbert's ability to engage in a common calling in the sense prohibited by the Privileges and Immunities Clause. Rather, the Court has struck laws down as violating the privilege of pursuing a common calling only when those laws were enacted for the protectionist purpose of burdening out-of-state citizens. See, *e.g.*, *Hicklin*, *supra*, (striking down as a violation of noncitizens' privileges and immunities an "Alaska Hire" statute containing a resident hiring preference for all employment related to the development of the State's oil and gas resources); *Toomer* v. *Witsell*, 334 U. S. 385, 395, 397 (1948) (striking down a South Carolina statute imposing a $2,500 license fee on out-of-state shrimping boats and only a $25 fee on in-state shrimping boats where petitioners alleged that the "purpose and effect of this statute . . . [was] not to conserve shrimp, but to exclude non-residents and thereby create a commercial monopoly for South Carolina residents," and the "record cas[t] some doubt on" the State's counterassertion that the statute's "obvious purpose was to conserve its shrimp supply"); *United Building & Constr. Trades Council of Camden Cty.* v. *Mayor and Council of Camden*, 465 U. S. 208 (1984) (New Jersey municipal ordinance requiring that at least 40% of employees of contractors and subcontractors working on city construction projects be city residents facially burdened out-of-state citizens' ability to pursue a common calling). In each case, the clear aim of the statute at issue was to advantage in-state workers and commercial interests at the expense of their out-of-state counterparts.

Virginia's FOIA differs sharply from those statutes. By its own terms, Virginia's FOIA was enacted to "ensur[e] the people of the Commonwealth ready access to public records in the custody of a public body or its officers and employees, and free entry to meetings of public bodies wherein the business of the people is being conducted."

Va. Code Ann. §2.2–3700(B) (Lexis 2011). Hurlbert does not allege—and has offered no proof—that the challenged provision of the Virginia FOIA was enacted in order to provide a competitive economic advantage for Virginia citizens. Cf. *Hillside Dairy Inc.* v. *Lyons*, 539 U. S. 59, 67 (2003) (piercing a professedly nondiscriminatory statute to find economic protectionism). Rather, it seems clear that the distinction that the statute makes between citizens and noncitizens has a distinctly nonprotectionist aim. The state FOIA essentially represents a mechanism by which those who ultimately hold sovereign power (*i.e.*, the citizens of the Commonwealth) may obtain an accounting from the public officials to whom they delegate the exercise of that power. See Va. Const., Art. I, §2; Va. Code Ann. §2.2–3700(B). In addition, the provision limiting the use of the state FOIA to Virginia citizens recognizes that Virginia taxpayers foot the bill for the fixed costs underlying recordkeeping in the Commonwealth. Tr. of Oral Arg. 53–54. The challenged provision of the state FOIA does not violate the Privileges and Immunities Clause simply because it has the incidental effect of preventing citizens of other States from making a profit by trading on information contained in state records. While the Clause forbids a State from intentionally giving its own citizens a competitive advantage in business or employment, the Clause does not require that a State tailor its every action to avoid any incidental effect on out-of-state tradesmen.

B

Hurlbert next alleges that the challenged provision of the Virginia FOIA abridges the right to own and transfer property in the Commonwealth. Like the right to pursue a common calling, the right to "take, hold and dispose of property, either real or personal," has long been seen as one of the privileges of citizenship. See *Corfield* v. *Coryell*, 6 F. Cas. 546, 552 (No. 3, 230) (CCED Pa. 1825); see also

*Paul*, *supra*, at 180 (listing "the acquisition and enjoyment of property" among the privileges of citizenship). Thus, if a State prevented out-of-state citizens from accessing records—like title documents and mortgage records—that are necessary to the transfer of property, the State might well run afoul of the Privileges and Immunities Clause. Cf. *State* v. *Grimes*, 29 Nev. 50, 85, 84 P. 1061, 1073 (1906) ("*Caveat emptor* being the rule with us in the absence of a special agreement, it is just and essential to the protection of persons intending to purchase or take incumbrances that they be allowed the right of inspection"); *Jackson ex dem. Center* v. *Campbell*, 19 Johns. 281, 283 (N. Y. 1822) (the "plain intention" of the State's property records system was "to give notice, through the medium of the county records, to persons about to purchase").

Virginia, however, does not prevent citizens of other States from obtaining such documents. Under Virginia law, "any records and papers of every circuit court that are maintained by the clerk of the circuit court shall be open to inspection by any person and the clerk shall, when requested, furnish copies thereof." Va. Code Ann. §17.1–208 (Lexis 2010). Such records and papers include records of property transfers, like title documents, §55–106 (Lexis 2012); notices of federal tax liens and other federal liens against property, §55–142.1; notices of state tax liens against property, §58.1–314 (Lexis 2009) (state taxes generally), §58.1–908 (estate tax liens), §58.1–1805 (state taxes generally), §58.1–2021(A) (liens filed by agencies other than the Tax Commission); and notice of mortgages and other encumbrances, §8.01–241 (Lexis Supp. 2012).

A similar flaw undermines Hurlbert's claim that Virginia violates the Privileges and Immunities Clause by preventing citizens of other States from accessing real estate tax assessment records. It is true that those records, while available to Virginia citizens under the state FOIA, are not required by statute to be made available to noncit-

izens. See *Associated Tax Service, Inc.* v. *Fitzpatrick*, 236 Va. 181, 183, 187, 372 S. E. 2d 625, 627, 629 (1988).[1] But in fact Virginia and its subdivisions generally make even these less essential records readily available to all. These records are considered nonconfidential under Virginia law and, accordingly, they may be posted online. §58.1–3122.2 (Lexis 2009). Henrico County, from which Hurlbert sought real estate tax assessments, follows this practice,[2] as does almost every other county in the Commonwealth. Requiring noncitizens to conduct a few minutes of Internet research in lieu of using a relatively cumbersome state FOIA process cannot be said to impose any significant burden on noncitizens' ability to own or transfer property in Virginia.

C

McBurney alleges that Virginia's citizens-only FOIA provision impermissibly burdens his "access to public proceedings." Brief for Petitioners 42. McBurney is correct that the Privileges and Immunities Clause "secures citizens of one State the right to resort to the courts of another, equally with the citizens of the latter State." *Missouri Pacific R. Co.* v. *Clarendon Boat Oar Co.*, 257 U. S. 533, 535 (1922). But petitioners do not suggest that

---

[1] At oral argument, the Solicitor General of Virginia contended that, as a matter of Virginia law, Hurlbert "is entitled to the tax assessment data in the clerk's office." Tr. of Oral Arg. 38. Neither at oral argument nor in its briefs did Virginia cite any Virginia statute providing that real estate tax assessment records be filed in the clerk's office. Virginia Code Ann. §58.1–3300 (Lexis 2009), which directs that "reassessment" records be filed with the clerk, may be the statute to which counsel referred, but without an official construction of the statute by Virginia's Supreme Court—and, in light of the fact that petitioners have not been afforded an opportunity to rebut its importance—we do not rely upon it here.

[2] See http://www.co.henrico.va.us/finance/disclaimer.html (as visited April 26, 2013, and available in Clerk of Court's case file).

the Virginia FOIA slams the courthouse door on noncitizens; rather, the most they claim is that the law creates "[a]n information asymmetry between adversaries based solely on state citizenship." Brief for Petitioners 42.

The Privileges and Immunities Clause does not require States to erase any distinction between citizens and noncitizens that might conceivably give state citizens some detectable litigation advantage. Rather, the Court has made clear that "the constitutional requirement is satisfied if the non-resident is given access to the courts of the State upon terms which in themselves are reasonable and adequate for the enforcing of any rights he may have, even though they may not be technically and precisely the same in extent as those accorded to resident citizens." *Canadian Northern R. Co.* v. *Eggen*, 252 U. S. 553, 562 (1920).

The challenged provision of the Virginia FOIA clearly does not deprive noncitizens of "reasonable and adequate" access to the Commonwealth's courts. Virginia's rules of civil procedure provide for both discovery, Va. Sup. Ct. Rule 4:1 (2012), and subpoenas *duces tecum*, Rule 4:9. There is no reason to think that those mechanisms are insufficient to provide noncitizens with any relevant, nonprivileged documents needed in litigation.

Moreover, Virginia law gives citizens and noncitizens alike access to judicial records. Va. Code Ann. §17.1–208; see also *Shenandoah Publishing House, Inc.* v. *Fanning*, 235 Va. 253, 258, 368 S. E. 2d 253, 256 (1988). And if Virginia has in its possession information about any person, whether a citizen of the Commonwealth or of another State, that person has the right under the Government Data Collection and Dissemination Practices Act to inspect that information. §2.2–3806(A)(3) (Lexis 2011).

McBurney's own case is illustrative. When his FOIA request was denied, McBurney was told that he should request the materials he sought pursuant to the Govern-

ment Data Collection and Dissemination Practices Act. Upon placing a request under that Act, he ultimately received much of what he sought. Accordingly, Virginia's citizens-only FOIA provision does not impermissibly burden noncitizens' ability to access the Commonwealth's courts.

D

Finally, we reject petitioners' sweeping claim that the challenged provision of the Virginia FOIA violates the Privileges and Immunities Clause because it denies them the right to access public information on equal terms with citizens of the Commonwealth. We cannot agree that the Privileges and Immunities Clause covers this broad right.

This Court has repeatedly made clear that there is no constitutional right to obtain all the information provided by FOIA laws. See *Houchins* v. *KQED, Inc.*, 438 U. S. 1, 14 (1978) (plurality opinion) ("'The Constitution itself is [not] a Freedom of Information Act'"); see also *Los Angeles Police Dept.* v. *United Reporting Publishing Corp.*, 528 U. S. 32, 40 (1999) (the Government could decide "not to give out [this] information at all"); *Sorrell* v. *IMS Health Inc.*, 564 U. S. ___, ___ (2011) (BREYER, J., dissenting) (slip op., at 8) ("[T]his Court has *never* found that the *First Amendment* prohibits the government from restricting the use of information gathered pursuant to a regulatory mandate").

It certainly cannot be said that such a broad right has "at all times, been enjoyed by the citizens of the several states which compose this Union, from the time of their becoming free, independent, and sovereign." *Corfield*, 6 F. Cas., at 551. No such right was recognized at common law. See H. Cross, The People's Right to Know 25 (1953) ("[T]he courts declared the primary rule that there was no general common law right in all persons (as citizens, taxpayers, electors or merely as persons) to inspect public

records or documents"). Most founding-era English cases provided that only those persons who had a personal interest in non-judicial records were permitted to access them. See, *e.g., King* v. *Shelley*, 3 T. R. 141, 142, 100 Eng. Rep. 498, 499 (K. B. 1789) (Buller, J.) ("[O]ne man has no right to look into another's title deeds and records, when he . . . has no interest in the deeds or rolls himself"); *King* v. *Justices of Staffordshire*, 6 Ad. & E. 84, 101, 112 Eng. Rep. 33, 39 (K. B. 1837) ("The utmost . . . that can be said on the ground of interest, is that the applicants have a rational curiosity to gratify by this inspection, or that they may thereby ascertain facts useful to them in advancing some ulterior measures in contemplation as to regulating county expenditure; but this is merely an interest in obtaining information on the general subject, and would furnish an equally good reason for permitting inspection of the records of any other county: there is not that direct and tangible interest, which is necessary to bring them within the rule on which the Court acts in granting inspection of public documents").

Nineteenth-century American cases, while less uniform, certainly do not support the proposition that a broad-based right to access public information was widely recognized in the early Republic. See, *e.g., Cormack* v. *Wolcott*, 37 Kan. 391, 394, 15 P. 245, 246 (1887) (denying mandamus to plaintiff seeking to compile abstracts of title records; "At common law, parties had no vested rights in the examination of a record of title, or other public records, save by some interest in the land or subject of record"); *Brewer* v. *Watson*, 71 Ala. 299, 305 (1882) ("The individual demanding access to, and inspection of public writings must not only have an interest in the matters to which they relate, a direct, tangible interest, but the inspection must be sought for some specific and legitimate purpose. The gratification of mere curiosity, or motives merely speculative will not entitle him to demand an examination

of such writings"); Nadel, What are "Records" of Agency Which Must Be Made Available Under State Freedom of Information Act, 27 A. L. R. 4th 680, 687, §2[b] (1984) ("[A]t common law, a person requesting inspection of a public record was required to show an interest therein which would enable him to maintain or defend an action for which the document or record sought could furnish evidence or necessary information").

Nor is such a sweeping right "basic to the maintenance or well-being of the Union." *Baldwin*, 436 U. S., at 388. FOIA laws are of relatively recent vintage. The federal FOIA was enacted in 1966, §1, 80 Stat. 383, and Virginia's counterpart was adopted two years later, 1968 Va. Acts ch. 479, p. 690. There is no contention that the Nation's unity foundered in their absence, or that it is suffering now because of the citizens-only FOIA provisions that several States have enacted.

## III

In addition to his Privileges and Immunities Clause claim, Hurlbert contends that Virginia's citizens-only FOIA provision violates the dormant Commerce Clause. The Commerce Clause empowers Congress "[t]o regulate Commerce . . . among the several States." Art. I, §8, cl. 3. The Commerce Clause does not expressly impose any constraints on "the several States," and several Members of the Court have expressed the view that it does not do so. See *General Motors Corp.* v. *Tracy*, 519 U. S. 278, 312 (1997) (SCALIA, J., concurring) ("[T]he so-called 'negative' Commerce Clause is an unjustified judicial intervention, not to be expanded beyond its existing domain"); *United Haulers Assn. Inc.* v. *Oneida-Herkimer Solid Waste Management Authority*, 550 U. S. 330, 349 (2007) (THOMAS, J., concurring in judgment) ("The negative Commerce Clause has no basis in the Constitution and has proved unworkable in practice"). Nonetheless, the Court has long inferred

that the Commerce Clause itself imposes certain implicit limitations on state power. See, *e.g., Cooley* v. *Board of Wardens of Port of Philadelphia ex rel. Soc. for Relief of Distressed Pilots*, 12 How. 299, 318–319 (1852); cf. *Gibbons* v. *Ogden*, 9 Wheat. 1, 209 (1824) (Marshall, C. J.) (dictum).

Our dormant Commerce Clause jurisprudence "significantly limits the ability of States and localities to regulate or otherwise burden the flow of interstate commerce." *Maine* v. *Taylor*, 477 U. S. 131, 151 (1986). It is driven by a concern about "economic protectionism—that is, regulatory measures designed to benefit in-state economic interests by burdening out-of-state competitors." *New Energy Co. of Ind.* v. *Limbach*, 486 U. S. 269, 273–274 (1988); see also *Philadelphia* v. *New Jersey*, 437 U. S. 617, 624 (1978) ("The crucial inquiry . . . must be directed to determining whether [the challenged statute] is basically a protectionist measure, or whether it can fairly be viewed as a law directed to legitimate local concerns, with effects upon interstate commerce that are only incidental").

Virginia's FOIA law neither "regulates" nor "burdens" interstate commerce; rather, it merely provides a service to local citizens that would not otherwise be available at all. The "common thread" among those cases in which the Court has found a dormant Commerce Clause violation is that "the State interfered with the natural functioning of the interstate market either through prohibition or through burdensome regulation." *Hughes* v. *Alexandria Scrap Corp.*, 426 U. S. 794, 806 (1976). Here, by contrast, Virginia neither prohibits access to an interstate market nor imposes burdensome regulation on that market. Rather, it merely creates and provides to its own citizens copies—which would not otherwise exist—of state records. As discussed above, the express purpose of Virginia's FOIA law is to "ensur[e] the people of the Commonwealth ready access to public records in the custody of a public

body or its officers and employees, and free entry to meetings of public bodies wherein the business of the people is being conducted." Va. Code Ann. §2.2–3700(B). This case is thus most properly brought under the Privileges and Immunities Clause: It quite literally poses the question whether Virginia can deny out-of-state citizens a benefit that it has conferred on its own citizens. Cf. *Missouri Pacific R. Co.*, 257 U. S., at 535 (analyzing whether the privilege of access to a State's courts must be made available to out-of-state citizens equally with the citizens of the relevant State). Because it does not pose the question of the constitutionality of a state law that interferes with an interstate market through prohibition or burdensome regulations, this case is not governed by the dormant Commerce Clause.

Even shoehorned into our dormant Commerce Clause framework, however, Hurlbert's claim would fail. Insofar as there is a "market" for public documents in Virginia, it is a market for a product that the Commonwealth has created and of which the Commonwealth is the sole manufacturer. We have held that a State does not violate the dormant Commerce Clause when, having created a market through a state program, it "limits benefits generated by [that] state program to those who fund the state treasury and whom the State was created to serve." *Reeves, Inc.* v. *Stake*, 447 U. S. 429, 442 (1980). "Such policies, while perhaps 'protectionist' in a loose sense, reflect the essential and patently unobjectionable purpose of state government—to serve the citizens of the State." *Ibid.*; cf. *Department of Revenue of Ky.* v. *Davis*, 553 U. S. 328, 341 (2008) ("[A] government function is not susceptible to standard dormant Commerce Clause scrutiny owing to its likely motivation by legitimate objectives distinct from the simple economic protectionism the Clause abhors"). For these reasons, Virginia's citizens-only FOIA provision does not violate the dormant Commerce Clause.

Opinion of the Court

\*     \*     \*

Because Virginia's citizens-only FOIA provision neither abridges any of petitioners' fundamental privileges and immunities nor impermissibly regulates commerce, petitioners' constitutional claims fail. The judgment below is affirmed.

*It is so ordered.*

# SUPREME COURT OF THE UNITED STATES

_____

No. 12–17

_____

MARK J. MCBURNEY, ET AL., PETITIONERS v. NA-
THANIEL L. YOUNG, DEPUTY COMMISSIONER
AND DIRECTOR, VIRGINIA DIVISION OF
CHILD SUPPORT ENFORCEMENT, ET AL.

ON WRIT OF CERTIORARI TO THE UNITED STATES COURT OF
APPEALS FOR THE FOURTH CIRCUIT

[April 29, 2013]

JUSTICE THOMAS, concurring.

I join the Court's opinion. Though the Court has properly applied our dormant Commerce Clause precedents, I continue to adhere to my view that "[t]he negative Commerce Clause has no basis in the text of the Constitution, makes little sense, and has proved virtually unworkable in application, and, consequently, cannot serve as a basis for striking down a state statute." *Hillside Dairy Inc.* v. *Lyons*, 539 U. S. 59, 68 (2003) (opinion concurring in part and dissenting in part) (citation and internal quotation marks omitted).