REISNER, P.J.A.D.
*932 *624 These three appeals, which we consolidated for purposes of this opinion, present the same issue: Does a person who is not a resident or domiciliary of New Jersey have standing to file a *625 request for public records under the Open Public Records Act (OPRA), or are rights under OPRA restricted to "citizens" of New Jersey?
We conclude that the reference to "citizens"-found in N.J.S.A. 47:1A-1 and nowhere else in OPRA-expresses the Legislature's general intent to make New Jersey government records open to the public, rather than expressing an intent to limit access to only New Jersey residents or domiciliaries. Because the more specific provisions of OPRA refer to "any person," and because OPRA is to be construed broadly to achieve the Legislature's over-arching goal of making public records freely available, we conclude that the right to request records under OPRA is not limited to "citizens" of New Jersey.
Accordingly, we affirm the October 8, 2015 and December 24, 2015 orders on appeal in A-2092-15.[1] We reverse the orders on appeal in A-2704-15 and A-2716-15, and remand those cases to the trial court for further proceedings consistent with this opinion.
I
The appeals present a purely legal issue, as to which our review is de novo. See Manalapan Realty, LP v. Twp. Comm. of Manalapan, 140 N.J. 366, 378, 658 A.2d 1230 (1995). However, we set forth some brief background concerning each case.
In A-2092-15, Harry Scheeler, an open government activist who moved from New Jersey to North Carolina in 2014, submitted an OPRA request seeking records from Atlantic County Municipal Joint Insurance Fund (ACMJIF), ACMJIF's fund administrator, *626 and its records custodian (collectively, defendants). Specifically, he sought records concerning legal bills submitted for payment for lawsuits filed against Hamilton Township, Atlantic County. Defendants provided some of the records, but declined to provide what they *933 characterized as "confidential and privileged memos" for ongoing litigation. After Scheeler filed an OPRA lawsuit in Burlington County, defendants contended that he had no standing to request documents under OPRA because he was not a citizen of New Jersey.
In a series of well-reasoned written opinions, Judge Bookbinder concluded that the right to request public records under OPRA is not limited to New Jersey citizens. He also found that the "confidential memos" were not memoranda at all, but were simply detailed legal invoices. The judge concluded that OPRA required defendants to produce them, but he permitted defendants to redact any attorney-client privileged material or work product. Defendants subsequently produced the records, with redactions. The judge also awarded Scheeler counsel fees for the litigation, pursuant to OPRA. See N.J.S.A. 47:1A-6.
In A-2716-15, Scheeler filed a similar OPRA lawsuit against the City of Cape May, seeking records concerning government spending on legal services. In that case, another trial judge dismissed the complaint, reasoning that only New Jersey citizens had standing to request public records under OPRA. The judge was particularly concerned with the burden Scheeler's requests placed on local government resources, asking rhetorically:
At the time the OPRA was adopted, did the members of the New Jersey Legislature contemplate that they were authorizing an out of state gadfly to repeatedly bombard local governments with demands to produce public records?
In A-2704-15, the Lawyers' Committee for Civil Rights Under Law (LCCR), a national non-profit civil rights organization, sought records from the Atlantic City Board of Education (Board), concerning school level enrollment and disciplinary data. The same judge who dismissed Scheeler's case against Cape May also dismissed LCCR's OPRA complaint against the Board on standing grounds.
*627 II
The issue presented in these three appeals revolves around a phrase used in the first paragraph of N.J.S.A. 47:1A-1. The municipal defendants rely on the following language:
The Legislature finds and declares it to be the public policy of this State that:
government records shall be readily accessible for inspection, copying, or examination by the citizens of this State....
[ N.J.S.A. 47:1A-1 (emphasis added).]
In construing a statute, we first consider its language. In re Kollman, 210 N.J. 557, 568, 46 A.3d 1247 (2012). Ordinarily, if the statutory language is unambiguous, our task is complete and we need not look further. DiProspero v. Penn, 183 N.J. 477, 492-93, 874 A.2d 1039 (2005). However, if a word or phrase is ambiguous, we then consider the context in which the language appears, the language of the statute as a whole, the statute's purpose, and its history. See Wilson ex rel. Manzano v. City of Jersey City, 209 N.J. 558, 572, 39 A.3d 177 (2012). In construing a statute, we must be faithful to the Legislature's intent in enacting it. See Sussex Commons Assocs., LLC v. Rutgers, 210 N.J. 531, 540-41, 46 A.3d 536 (2012). We should, therefore, avoid literal interpretations of words or phrases that will produce an absurd result, contrary to the legislative purpose. Id. at 541, 46 A.3d 536.
In using the term "citizens of this State," the Legislature arguably created an ambiguity in N.J.S.A. 47:1A-1. However, we conclude that any ambiguity is easily resolved. Reading N.J.S.A. 47:1A-1 sensibly, *934 bearing in mind the context in which the phrase "citizens of this State" is used, the terms the Legislature used in the rest of OPRA, and considering the statute's history and purpose, we cannot conclude that the Legislature intended to preclude out-of-state residents from making OPRA requests.
The term "citizen" appears in the above-quoted section of N.J.S.A. 47:1A-1, and in its last paragraph:
[A] public agency has a responsibility and an obligation to safeguard from public access a citizen's personal information with which it has been entrusted when disclosure thereof would violate the citizen's reasonable expectation of privacy ....
*628 [Ibid. (emphasis added).]
Clearly the term "citizen" in the last paragraph does not refer to New Jersey residents. It would produce an absurd result if the government were only required to protect personal information of New Jersey residents and could freely disseminate medical records, school transcripts, and other personal information of out-of-state residents. It is more logical to construe the term "citizen" as simply meaning "a person" or "an individual."
Although OPRA has an extensive definitions section, N.J.S.A. 47:1A-1.1, "citizen" is not defined. Other than in N.J.S.A. 47:1A-1, the term does not appear anywhere else in the statute. Rather, the remaining sections of OPRA use the term "person" or "requestor."
Significantly, section five of OPRA, which specifically addresses the obligation to produce records, uses the terms "person" or "requestor." N.J.S.A. 47:1A-5(a) provides that a government records custodian "shall permit the record to be inspected, examined, and copied by any person during regular business hours ...." (emphasis added). Subsection (b) provides that "[a] copy or copies of a government record may be purchased by any person upon payment of the fee prescribed by law or regulation." N.J.S.A. 47:1A-5(b) (emphasis added). Subsection (c) permits "[t]he requestor" to review and object to a charge for copying public records. N.J.S.A. 47:1A-5(c). Subsections (f) and (i) indicate that anonymous OPRA requests are permitted, which appears incompatible with a state residency requirement. N.J.S.A. 47:1A-5(f) and (i). See A.A. v. Gramiccioni, 442 N.J. Super. 276, 283, 122 A.3d 353 (App Div. 2015) ; see also N.J.S.A. 47:1A-2.2(c) (prohibiting anonymous requests for certain information about crime victims).
The OPRA section concerning enforcement provides that "[a] person who is denied access to a government record by the custodian of the record, at the option of the requestor, may" file a lawsuit in Superior Court or file a complaint with the Government Records Council (GRC). N.J.S.A. 47:1A-6 (emphasis added). Further, "[a] requestor" who prevails in an OPRA action is entitled to counsel fees. N.J.S.A. 47:1A-6. See also *629 N.J.S.A. 47:1A-7(b) and (d) (GRC is to address an OPRA complaint filed by "any person" and offer mediation where "any person" files a complaint).
Although N.J.S.A. 47:1A-1 refers to protecting the privacy rights of a "citizen," a more specific section of OPRA that addresses personnel records refers to "any individual."
Notwithstanding the provisions of [OPRA] or any other law to the contrary, the personnel or pension records of any individual in the possession of a public agency, including but not limited to records relating to any grievance filed by or against an individual, shall not be considered a government record ....
[ N.J.S.A. 47:1A-10 (emphasis added).]
*935 This further supports our view that "citizen," as used in N.J.S.A. 47:1A-1, was not intended as a restrictive term.
The purpose and history of OPRA support our construction. OPRA embodies "the State's policy in favor of broad access to public records." N. Jersey Media Grp., Inc. v. Twp. of Lyndhurst, 229 N.J. 541, 555, 163 A.3d 887 (2017). The Legislature intended "to maximize public knowledge about public affairs in order to ensure an informed citizenry and to minimize the evils inherent in a secluded process." Ibid. (quoting Mason v. City of Hoboken, 196 N.J. 51, 64, 951 A.2d 1017 (2008) ).
The predecessor to OPRA, the Right to Know Law (RTKL), L. 1963, c. 73, provided considerably narrower rights of public access to government records. N. Jersey Media, 229 N.J. at 565-66, 163 A.3d 887. In replacing the RTKL with OPRA, the Legislature expressed its intent to expand the public's right of access to public records, beyond that permitted by the RTKL. Id. at 566, 163 A.3d 887. "When it enacted OPRA, the Legislature replaced the RTKL's more restrictive view of public access with the current, far broader approach." Id. at 566, 163 A.3d 887.
Unlike in OPRA, the term "citizen" was used throughout the RTKL, including the specific provisions defining who could request and obtain records and who could enforce the statute. See N.J.S.A. 47:1A-2 ; N.J.S.A. 47:1A-2.1 ; N.J.S.A. 47:1A-4 (repealed *630 by OPRA, L. 2001, c. 404).[2] We conclude that in replacing the term "citizen" with "person" in the analogous sections of OPRA, the Legislature signaled its intent to broaden rather than limit the right of public access.[3] See In re Zhan, 424 N.J. Super. 231, 237, 37 A.3d 521 (App. Div. 2012) ("The term 'any person' is clearly broader than the term 'citizen.' "). The Statement to Senate Bill No. 2003, which was adopted as OPRA, also lends some support for that view, because the Statement referred to "the public" rather than to state citizens. Sponsor's Statement, Statement to Senate Bill No. 2003 (2000). "The bill amends N.J.S.A. 47:1A-1 to affirmatively state that: the public has a right of access, with certain exceptions, to all government records ...." Sponsor's Statement, Statement to Senate Bill No. 2003 (2000).
Moreover, in the same paragraph of N.J.S.A. 47:1A-1 that contains the phrase "the citizens of this State," the Legislature directed that "any limitations on the right of access accorded by [OPRA], shall be construed in favor of the public's right of access." N.J.S.A. 47:1A-1. Thus, any doubts about the meaning of the phrase should be resolved in favor of public access, and hence in favor of construing the *936 phrase as a generality rather than an *631 intentional limit on standing.[4] See Serrano v. South Brunswick Twp., 358 N.J. Super. 352, 366, 817 A.2d 1004 (App. Div. 2003) (ambiguities in OPRA are to be resolved in favor of public access).
On this appeal, the amici curiae present a variety of policy arguments in support of their respective interpretations of the statute. For example, the amici representing the news media argue that making government records open to all requestors, regardless of their geographic location, enables out-of-state news organizations to uncover and report on information of importance to this state's inhabitants. The municipal amici contend that providing copies of public records to requestors from all over the country, and potentially from all over the world, would place an undue burden on their limited resources. However, it is not our role to make policy, but to discern the Legislature's policy and honor it in our construction of statutes. See In re Town of Harrison, 440 N.J. Super. 268, 301, 112 A.3d 1168 (App. Div. 2015). Concerns about OPRA's practical ramifications should be directed to the Legislature.
Affirmed in A-2092-15; reversed and remanded in A-2704-15 and A-2716-15. We do not retain jurisdiction.

In A-2092-15, defendants raise additional legal challenges to the order directing them to turn over attorney billing records, subject to the right to redact privileged materials, and to the counsel fee awarded to plaintiff. See N.J.S.A. 47:1A-1.1 ; N.J.S.A. 47:1A-5(e) ; N.J.S.A. 47:1A-6. Those issues were thoroughly and correctly addressed by Assignment Judge Ronald E. Bookbinder in his August 31, 2016 supplemental written opinion, issued pursuant to Rule 2:5-1(b). Defendants' arguments are without sufficient merit to warrant further discussion here. R. 2:11-3(e)(1)(E).

While addressing a different issue, our Supreme Court stated in dicta that "[t]he RTKL has no standing requirement other than New Jersey citizenship." Keddie v. Rutgers, 148 N.J. 36, 44, 689 A.2d 702 (1997).

Defendants' reliance on McBurney v. Young, 569 U.S. 221, 133 S.Ct. 1709, 185 L.Ed.2d 758 (2013), is misplaced. In one sentence, the Court listed OPRA as one of several state statutes that limited record access to citizens of the state. McBurney, 569 U.S. at 226, 133 S.Ct. 1709. The sentence was dicta, with no accompanying rationale, and it is not binding on us. See Becker v. Baron Bros., 138 N.J. 145, 165, 649 A.2d 613 (1994) ("Although we often look to the decisions of federal courts for guidance, we are not bound by their decisions in respect of our own state law."). Likewise, we owe no deference to legal opinions of the GRC, which has issued contradictory advice on this issue. See Paff v. Galloway Twp., 229 N.J. 340, 356-57, 162 A.3d 1046 (2017) ; N.J.S.A. 47:1A-7(e). Nor can we attribute significance to bills introduced prior to OPRA, but never adopted. See Jersey City Chapter, Prop. Owner's Protective Ass'n v. Jersey City, 55 N.J. 86, 95-96, 259 A.2d 698 (1969).

It is not unusual for the Legislature to express a general intent that a statute should improve conditions for this State's citizens or inhabitants, while using different terms in the rest of the statute. For example, the Law Against Discrimination (LAD) states the Legislature's concern about discrimination "against any of [this state's] inhabitants." N.J.S.A. 10:5-3. However, that does not mean that the LAD only protects New Jersey residents and allows discrimination against visitors from other states. The LAD's specific provisions addressing discrimination in housing, employment and public accommodations prohibit discrimination against any "person," or any "individual." See N.J.S.A. 10:5-4 ; N.J.S.A. 10:5-12.