MURPHY, Circuit Judge, concurring.
I join the Court's opinion in full and write only to express some reservations with the specific type of access-to-court claim that Dawn Green asserts here. This claim's contours have been described as " 'nebulous.' " Foster v. City of Lake Jackson , 28 F.3d 425, 430 (5th Cir. 1994) (citation omitted). That strikes me as a fitting description. Because the claim's scope has not been thoroughly briefed in this case, I add just a few thoughts to highlight tensions I see between this claim and the general constitutional corpus juris.
To be clear at the outset: "It is beyond dispute that the right of access to the courts is a fundamental right protected by the Constitution." Graham v. Nat'l Collegiate Athletic Ass'n , 804 F.2d 953, 959 (6th Cir. 1986). Under this right, a state generally may not discriminate against out-of-staters in their ability to access its courts. See McBurney v. Young , 569 U.S. 221, 231, 133 S.Ct. 1709, 185 L.Ed.2d 758 (2013) ; Corfield v. Coryell , 6 F. Cas. 546, 551-52 (Washington, Circuit Justice, C.C.E.D. Pa. 1823). Nor may the state physically bar certain individuals from filing suit. See Ex parte Hull , 312 U.S. 546, 548-49, 61 S.Ct. 640, 85 L.Ed. 1034 (1941). And a state, of course, may not disrupt an individual's ability to uncover a legal claim for racially discriminatory reasons. See Bell v. City of Milwaukee , 746 F.2d 1205, 1259-65 (7th Cir. 1984), overruled on other grounds by Russ v. Watts , 414 F.3d 783 (7th Cir. 2005).
But Green's access-to-court claim-as distinct from her equal-protection claim alleging race and sex discrimination-proposes a far more expansive (and elusive) right. Injured in a car accident, Green asserts that the other driver ran a red light. Yet she was able to file a tort suit against him and use the state court's discovery tools to develop evidence in support. She thus cannot allege that the *288 defendants in this case barred her from uncovering or prosecuting her claim. She instead alleges that they wrongly decided that she was at fault after a slipshod investigation, which allegedly pressured her to settle the tort suit for an inadequate amount. By "substantially prejudicing" her suit, Green's argument goes, the police denied her access to the state courts.
This type of access-to-court claim is of recent vintage, seemingly dating back to Ryland v. Shapiro , 708 F.2d 967 (5th Cir. 1983). The Supreme Court has considered it only once. Christopher v. Harbury , 536 U.S. 403, 414 n.9, 122 S.Ct. 2179, 153 L.Ed.2d 413 (2002). And, "[a]s Judge Michael W. McConnell stated shortly after [that] decision, '[t]he Supreme Court was careful not to endorse the [claim's] validity.' " Sousa v. Marquez , 702 F.3d 124, 128 (2d Cir. 2012) (quoting Jennings v. City of Stillwater , 383 F.3d 1199, 1209 (10th Cir. 2004) ). Two circuits have declined to expressly endorse it. See Sousa , 702 F.3d at 128 ; Jennings , 383 F.3d at 1207-09. Our Court, too, has described it as "much less established." See Flagg v. City of Detroit , 715 F.3d 165, 173 (6th Cir. 2013). In short, the claim remains a work in progress. Courts opting to recognize the claim, it seems to me, should apply it in a manner that adheres to (at least) three established constitutional principles.
Principle One: Consider how the Supreme Court treats torts by public actors. Whenever state actors negligently injure persons or damage their property, the state does not thereby "deprive" them of their "liberty" or "property" under the Due Process Clause. Daniels v. Williams , 474 U.S. 327, 331-33, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986). Even when a public actor intentionally pilfers property, the state has not violated due process if it permits the owner to seek redress in court. Hudson v. Palmer , 468 U.S. 517, 533, 104 S.Ct. 3194, 82 L.Ed.2d 393 (1984) ; see Parratt v. Taylor , 451 U.S. 527, 537-44, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981). "The commonsense teaching of [these cases] is that some questions of property, contract, and tort law are best resolved by state legal systems without resort to the federal courts, even when a state actor is the alleged wrongdoer." Albright v. Oliver , 510 U.S. 266, 284, 114 S.Ct. 807, 127 L.Ed.2d 114 (1994) (Kennedy, J., concurring in judgment).
Why should a state actor's interference with a claim for damages to a car receive greater constitutional scrutiny than the actor's outright theft of the car? After all, " 'a cause of action is a species of property protected by the Fourteenth Amendment's Due Process Clause.' " Tulsa Prof'l Collection Servs., Inc. v. Pope , 485 U.S. 478, 485, 108 S.Ct. 1340, 99 L.Ed.2d 565 (1988) (citation omitted). I tend to think that the Justices' tort teachings apply to legal claims (a kind of intangible property) as much as they do to tangible property. These teachings should inform what we mean when we say that an access-to-court claim requires "obstructive actions by state actors." Flagg , 715 F.3d at 174. That phrase covers, as the Court today holds, only deliberate misconduct (not negligent investigations). See Daniels , 474 U.S. at 331-33, 106 S.Ct. 662. Even with respect to deliberate misconduct, these teachings should inform what we mean when we say that an access-to-court claim requires proof that a litigation-related injury "cannot be remedied by the state court." Flagg , 715 F.3d at 174. That phrase "should require that the plaintiff allege and prove that the state's judicial process does not provide fair procedures to remedy the wrong alleged." Swekel v. City of River Rouge , 119 F.3d 1259, 1265 (6th Cir. 1997) (Merritt, J., concurring); see Hudson , 468 U.S. at 533, 104 S.Ct. 3194. Here, however, Green has not identified any defect in the *289 state courts that barred her from uncovering the evidence on which she relies; in fact, she generated much of that evidence in those courts. But the federal access-to-court claim is supposed to vindicate the underlying state suit, not the other way around.
Principle Two: Consider what the Supreme Court has said about the government's duty to provide citizens with information in its possession. " 'The Constitution itself is [not] a Freedom of Information Act.' " Houchins v. KQED, Inc. , 438 U.S. 1, 14-15, 98 S.Ct. 2588, 57 L.Ed.2d 553 (1978) (plurality opinion) (citation omitted). Thus, "there is no constitutional right to obtain all the information provided by FOIA laws." McBurney , 569 U.S. at 232, 133 S.Ct. 1709. This rule, moreover, does not end at the courthouse door. "It is well settled that parties to judicial or quasi-judicial proceedings are not entitled to discovery as a matter of constitutional right." NLRB v. Valley Mold Co. , 530 F.2d 693, 695 (6th Cir. 1976). Even in criminal cases, the Supreme Court has explained that "[t]here is no general constitutional right to discovery" when clarifying the reach of Brady v. Maryland , 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). See Weatherford v. Bursey , 429 U.S. 545, 559, 97 S.Ct. 837, 51 L.Ed.2d 30 (1977).
If the Constitution generally does not require the government to disclose information to citizens who request it for speech purposes, Los Angeles Police Dep't v. United Reporting Publ'g Corp. , 528 U.S. 32, 40, 120 S.Ct. 483, 145 L.Ed.2d 451 (1999), I do not see why the Constitution (as compared to discovery rules) should generally require the government to disclose information to citizens who request it for litigation purposes. Indeed, the Supreme Court has (sometimes) placed the right to access the courts in the First Amendment's Petition Clause, Borough of Duryea v. Guarnieri , 564 U.S. 379, 386, 131 S.Ct. 2488, 180 L.Ed.2d 408 (2011), and has said that the Free Speech and Petition Clauses often should be read the same way, see id. at 388-89, 131 S.Ct. 2488. These access-to-information cases should inform what we mean when say that a public actor's concealment of information caused " 'substantial prejudice' " to a claim. Flagg , 715 F.3d at 174 (citation omitted). It should not suffice to show that the government failed to turn over information that would have been helpful to a claim; otherwise, courts risk creating a constitutionally compelled "litigation hold" for all public information in conflict with the Supreme Court's cases. McBurney , 569 U.S. at 232, 133 S.Ct. 1709. Instead, an alleged concealment must have effectively (even if not physically) "den[ied] the plaintiffs the opportunity to file a lawsuit." Thompson v. Boggs , 33 F.3d 847, 852 (7th Cir. 1994). Here, however, Green "knew the identity of the defendant and had all of the requisite facts to file" her tort claim. Swekel , 119 F.3d at 1263.
Principle Three: Consider that this specific access-to-court claim emerged from cases in the prison setting like Bounds v. Smith , 430 U.S. 817, 97 S.Ct. 1491, 52 L.Ed.2d 72 (1977). See Crowder v. Sinyard , 884 F.2d 804, 811 (5th Cir. 1989), abrogated on other grounds by Horton v. California , 496 U.S. 128, 110 S.Ct. 2301, 110 L.Ed.2d 112 (1990). Yet the Supreme Court has cautioned that the constitutional principles applicable to prisoners do not neatly map over to the general populace. "[W]hen the State takes a person into its custody and holds him there against his will, the Constitution imposes upon it a corresponding duty to assume some responsibility for his safety and general well-being."
*290 DeShaney v. Winnebago Cty. Dep't of Soc. Servs. , 489 U.S. 189, 199-200, 109 S.Ct. 998, 103 L.Ed.2d 249 (1989). That logic does not extend to those free of a state's constraints. Id. at 199-201, 109 S.Ct. 998. That the government may have a duty to provide prisoners with "adequate food, shelter, clothing, and medical care," see Youngberg v. Romeo , 457 U.S. 307, 315, 102 S.Ct. 2452, 73 L.Ed.2d 28 (1982), does not mean that it must also furnish the entire population with their "most basic economic needs," Dandridge v. Williams , 397 U.S. 471, 485, 90 S.Ct. 1153, 25 L.Ed.2d 491 (1970).
If this distinction applies to constitutional questions concerning the necessities of life, I would think it covers access-to-court claims too. "Unlike prisoners, ordinary individuals do not find any physical barriers between them and the courts." Crowder , 884 F.2d at 811. Thus, courts should not presume that what the Supreme Court has found to be required for " 'adequate, effective, and meaningful' " court access in the prison context automatically applies outside a prison's walls. Cf. Swekel , 119 F.3d at 1262 (quoting Bounds , 430 U.S. at 822, 97 S.Ct. 1491 ). Even in that context, the Court has since Bounds "disclaim[ed]" any "suggest[ion] that the State must enable the prisoner to discover grievances, and to litigate effectively once in court." Lewis v. Casey , 518 U.S. 343, 354, 116 S.Ct. 2174, 135 L.Ed.2d 606 (1996). If that is true there, it must be true here. But, as far as I can see, Green's claim alleges nothing more than that the police's investigation undermined her ability to litigate effectively.
At day's end, I worry that the main thing justifying an elastic access-to-court claim is the instinct that, no matter its text, the Constitution must be read to afford an all-purpose remedy for whenever state actors are alleged to behave poorly. It's a natural instinct to be sure. But it's not one that the Supreme Court's cases allow us to indulge.
CONCURRING IN THE JUDGMENT
KAREN NELSON MOORE, Circuit Judge, concurring in the judgment.
The majority today concludes that because Dawn Green has not shown that the defendant officers either actively concealed or destroyed evidence relating to her state-law claim, Green has not sufficiently established a violation of her constitutional right of access to the courts. Although I agree that Green has not established that her right of access to the courts was violated, I concur in the judgment only, because I believe this case is resolved on another, more established, basis.
"It is beyond dispute that the right of access to the courts is a fundamental right protected by the Constitution." Swekel v. City of River Rouge , 119 F.3d 1259, 1261 (6th Cir. 1997) (quoting Graham v. Nat'l Collegiate Athletic Ass'n , 804 F.2d 953, 959 (6th Cir. 1986) ). Indeed, the right originates "in several provisions of the Constitution including: the Due Process Clause of the Fourteenth Amendment, the Equal Protection Clause, the First Amendment, and the Privileges and Immunities Clause of Article IV." Id. at 1262 (internal citations omitted). As the Supreme Court has recognized, access claims generally fall into two categories: forward-looking and backward-looking claims. Christopher v. Harbury , 536 U.S. 403, 415, 122 S.Ct. 2179, 153 L.Ed.2d 413 (2002). Backward-looking claims, at issue in Green's case, consider situations in which a previous litigation "ended poorly, or could not have commenced, or could have produced a remedy subsequently unobtainable." Id. at 414, 122 S.Ct. 2179 (footnotes omitted). Thus, the "ultimate goal" of backward-looking access claims is "simply the judgment in the access *291 claim itself, in providing relief obtainable in no other suit in the future." Id.
Although some circuits have expressed skepticism regarding the availability of backward-looking access claims, see Sousa v. Marquez , 702 F.3d 124, 127-28 (2d Cir. 2012), we have expressly recognized these claims, see Flagg v. City of Detroit , 715 F.3d 165, 173 (6th Cir. 2013) ; Swekel , 119 F.3d at 1262. Indeed, in Flagg v. City of Detroit , this court established a binding four-part test to analyze these claims. In order to show a backward-looking access claim, plaintiffs must show: "(1) a non-frivolous underlying claim; (2) obstructive actions by state actors; (3) substantial prejudice to the underlying claim that cannot be remedied by the state court; and (4) a request for relief which the plaintiff would have sought on the underlying claim and is now otherwise unattainable." Flagg , 715 F.3d at 174 (internal quotation marks and citations omitted) (alteration incorporated).
The majority today focuses on the second Flagg factor ("obstructive actions by state actors"), concluding-for the first time in a published opinion in this Circuit-that such actions must amount to either active concealment or destruction of evidence. The majority's discussion of the obstruction prong, however, is wholly unnecessary to resolve this case. Rather, I follow the lead of the panel in Flagg and conclude that because Green cannot satisfy the third Flagg factor ("substantial prejudice to the underlying claim that cannot be remedied by the state court"), Green cannot survive summary judgment.
"Demonstrating substantial and irreparable prejudice does not require a plaintiff to prove that he would have won his underlying claim in the absence of government obstruction." Id. at 178-79. Indeed, the Supreme Court has noted that even "arguable claims are settled, bought, and sold." Lewis v. Casey , 518 U.S. 343, 353 n.3, 116 S.Ct. 2174, 135 L.Ed.2d 606 (1996). Rather, "[w]here there is a known or easily discoverable defendant with whom to bargain on the underlying claim, even a marginal weakening of the underlying claim might suffice to demonstrate substantial and irreparable prejudice because it might have irreversibly reduced the amount for which the defendant would be willing to settle." Flagg , 715 F.3d at 179 ; cf. Jennings v. City of Stillwater , 383 F.3d 1199, 1209 (10th Cir. 2004) (concluding that the plaintiff was not prejudiced, in part because she was ultimately able to achieve the remedy she sought-a settlement-and she did not allege "that the settlement amount was inadequate on account of the government's actions so as to deny her meaningful relief"); see also Harbury , 536 U.S. at 414, 122 S.Ct. 2179 (mentioning "inadequate settlement").[1]
In the current case, Green cannot show that Traffic Specialist Keith Birberick's failure fully to investigate the traffic accident prejudiced her underlying state claim against the other driver, William Patterson. Green was able to file her suit against Patterson, conduct discovery, and settle the case. Indeed, Green admits that the very evidence she faults the officers for failing to obtain-witness Douglas Harris's and Green's versions of the accident-was *292 included in her case against Patterson; in her federal-court deposition, Green stated that she and Harris could have testified to rebut the allegedly inaccurate information contained in the traffic report. See R. 185-6 (Green Dep. at 11) (Page ID #5422) (testifying that she could have testified and told her story); R. 185-20 (Pl.'s Response to Defs.' Statement of Facts at 4) (Page ID #5531) (admitting that Green "intended to call Douglas Harris as an independent witness"). Admittedly, in an affidavit in response to the Defendants' motion for summary judgment, Green asserted that she chose to settle the state case against Patterson in part because the state-court judge told her that Harris's credibility had been undermined because he had not been interviewed at the scene of the accident and, therefore, she did not have a credible eyewitness to refute Patterson's version of events. R. 201 (Green Affidavit at 5) (Page ID #6720). However, as noted above, Green explained that she could have testified, thus permitting her to refute Patterson's claims, corroborate Harris's testimony, or explain why Harris was not questioned at the scene. R. 185-6 (Green Dep. at 11) (Page ID #5422). Moreover, Harris's credibility was not the only reason Green decided to settle her case. See R. 201 (Green Affidavit at 5) (Page ID #6720) (explaining that the settlement amount was "the highest amount the judge could get the insurer to pay").
In sum, I concur in the judgment only. I rest my decision on Green's failure to show "substantial prejudice" under Flagg and find it unnecessary to explore the full contours of Flagg 's "obstructive actions" requirement, which can await another case and another day.

My colleagues today also suggest that in order to show prejudice, a plaintiff should be required to establish that the government's obstructive actions effectively denied her the ability to file a case. See Concurrence at 289. This ignores both our established precedent in Flagg , 715 F.3d at 178-79, as well as the Supreme Court's recognition that in the context of access claims, non-frivolous claims that are "lost, rejected, or impeded" may form the basis of a viable cause of action, because even "arguable claims are settled, bought, and sold," Casey , 518 U.S. at 353 nn.3-4, 116 S.Ct. 2174.