[No. B057462. Second Dist., Div. Seven. Sept. 17, 1991.†]

BOBBY HEBERT, Plaintiff and Appellant, v.
LOS ANGELES RAIDERS, LTD., et al., Defendants and Respondents.

†Review granted December 12, 1991. Review dismissed and opinion order published April 21, 1994.

## COUNSEL

Hill, Wynne, Troop & Meisinger, Louis M. Meisinger, Ronald D. Reynolds, Daniel Gunning and David A. Householder for Plaintiff and Appellant.

Skadden, Arps, Slate, Meagher & Flom, Frank Rothman, Douglas B. Adler, Darrel J. Hieber, Gary S. Glickman, Jeffrey E. Birren and Amy J. Trask for Defendants and Respondents.

## OPINION

**LILLIE, P. J.**—Plaintiff, Bobby Hebert, appeals from judgment of dismissal entered following an order sustaining demurrer of defendants, Los Angeles Raiders, Ltd. (Raiders) and National Football League (NFL), to plaintiff's amended complaint without leave to amend.[1]

### FACTS

The amended complaint alleged: Defendant NFL is an unincorporated association comprised of 28 professional football teams, each of which is a separate entity that operates a professional football franchise for profit in various cities across the United States. Defendant Raiders operates one of these franchises in Los Angeles under the team name Los Angeles Raiders. Plaintiff, a resident of California, has been a professional football player in the NFL since 1985, playing under contract to the New Orleans Saints (Saints), another NFL team. The NFL member teams constitute the only market in the United States for the services of major league professional football players. Instead of engaging in free competition for players' services the NFL, the Raiders and other NFL member teams have combined and

---

[1]Actually, plaintiff purports to appeal from the order sustaining the demurrer without leave to amend and an order granting defendants' motion to dismiss pursuant to Code of Civil Procedure section 581, subdivision (f)(1). Neither of these orders is appealable; appeal must be taken from the ensuing order (judgment) of dismissal. (Code Civ. Proc., §§ 581d, 904.1; *Yancey v. Fink* (1991) 226 Cal. App.3d 1334, 1342 [277 Cal.Rptr. 415]; *Adohr Milk Farms, Inc. v. Love* (1967) 255 Cal.App.2d 366, 369 [63 Cal.Rptr. 123].) A judgment of dismissal was entered before the notice of appeal was filed. Construing the notice of appeal liberally in favor of its sufficiency (Cal. Rules of Court, rule 1(a)), we interpret it to apply to the appealable judgment rather than the nonappealable orders. (See *Vibert v. Berger* (1966) 64 Cal.2d 65, 67-68 [48 Cal.Rptr. 886, 410 P.2d 390]; *Luz v. Lopes* (1960) 55 Cal.2d 54, 59-60 [10 Cal.Rptr. 161, 358 P.2d 289].)

conspired to eliminate such competition among themselves through various agreements, including "Plan B" (hereinafter described), which prevent plaintiff from bargaining as a free agent and selling his services to the team for which he wishes to play.

The history of the NFL's anticompetitive restraints on players goes back to the "Rozelle Rule," adopted by NFL member teams in 1963 as an amendment to their constitution and bylaws. The Rozelle Rule provided that an NFL team desiring the services of a player whose contract had expired (veteran free agent) could not sign that player without paying some form of compensation to the player's former team. If the two teams could not agree on the compensation, Pete Rozelle, then commissioner of the NFL, would assess the compensation. The effect of the Rozelle Rule was to restrain competition among the NFL teams for players' services. It operated to restrict the players' freedom of movement by binding them to one team throughout their careers and denying them the right to sell their services in a free and open market. In 1976, the Rozelle Rule was held to constitute an unreasonable restraint of trade in violation of the Sherman Act. (*Mackey* v. *National Football League* (8th Cir. 1976) 543 F.2d 606.)

In 1977 and again in 1982 the NFL entered into collective bargaining agreements with the NFL Players Association (NFLPA). The agreements included the "First Refusal/Compensation" system whereby each NFL team could prohibit a veteran free agent from moving to another NFL team by exercising a right of first refusal and matching a competing team's offer to such player. If the player's former team chose not to match the offer, it would receive substantial compensation from the new team in the form of one or more college draft choices. The 1982 collective bargaining agreement expired in 1987.

On February 1, 1989, despite the absence of a new collective bargaining agreement, the NFL and its member teams, acting unilaterally and without player approval, agreed to a new system of player restraints called Plan B. Under Plan B the NFL and the Raiders and the other NFL teams agreed that each team had the right to "protect" 37 out of 45 players on its active player roster; these protected players continued to be subject to the anticompetitive first refusal/compensation system. The vast majority of players, including plaintiff, remain bound to their former teams under the Plan B first refusal/compensation system which eliminates the ability of players to obtain a competitive market value for their services by inhibiting or preventing bidding by NFL teams, and also serves to restrict or eliminate the players' freedom of movement.

From February 1, 1985, to February 1, 1990, plaintiff was under contract to the Saints. Prior to the beginning of the 1990 NFL season plaintiff was

ranked third by the NFL among active NFL quarterbacks. When plaintiff's contract expired (Feb. 1, 1990) he was designated "protected" by the Saints under Plan B. Accordingly, plaintiff had only a two-month period in which he could attempt to negotiate with another NFL team. Because of the anticompetitive restraints and effect of Plan B plaintiff did not receive an offer from any NFL team during the two-month period and on April 1, 1990, when the period expired, plaintiff's ability to negotiate a contract with any team was completely foreclosed. Further, although plaintiff was no longer under contract to the Saints, the "rights" to plaintiff reverted to the Saints and he became their exclusive property for the 1990-1991 season. Thus, under Plan B plaintiff had only two options: either play for the Saints on whatever terms they dictated or not play at all.

Beginning in January 1990 plaintiff had discussions with the Raiders about playing for them in the 1990 season and beyond. Plaintiff and his agent repeatedly were told by authorized representatives of the Raiders that the Raiders wanted to enter into a contract with plaintiff and would have done so but for the prohibitions contained in Plan B. At the time this action was filed (Oct. 1990) six weeks of the NFL regular season had elapsed and plaintiff did not have a contract to play for any NFL team.

Plan B is a contract among the NFL, the Raiders and the other NFL member teams which restrains plaintiff from engaging in his lawful profession, trade or business in violation of California Constitution, article I, section 1, and Business and Professions Code section 16600.

The amended complaint sought the following relief: (1) a declaration that the NFL's and the Raiders' participation in Plan B violates the Constitution and Business and Professions Code section 16600 insofar as it restrains plaintiff from engaging in professional football; and (2) preliminary and permanent injunctions enjoining the NFL and the Raiders from participating in or enforcing Plan B.[2]

Defendants demurred generally to the amended complaint on the ground the commerce clause of the federal Constitution precludes application of the provisions of California law relied upon by plaintiff to the player-team-league relationship of the NFL. Over plaintiff's opposition, the demurrer was sustained without leave to amend. Judgment was entered dismissing the amended complaint. This appeal followed.

---

[2]Plaintiff's motion for preliminary injunction was denied. In this court plaintiff filed a petition for writ of mandate directing respondent court to grant the motion or for writ of supersedeas enjoining real parties in interest from enforcing Plan B against plaintiff during the 1990 football season. The petition was denied.

## DISCUSSION

## I

## APPEAL NOT DISMISSED FOR MOOTNESS

Attached to defendants' reply brief as an exhibit are copies of two contracts between plaintiff and the Saints (executed during the pendency of this appeal) whereby the Saints employed plaintiff to play for them from February 1, 1991, through February 1, 1993. ▇▇▇ Defendants argue that because these contracts show plaintiff is not prevented from pursuing his chosen career as a professional football player, the relief requested in the amended complaint is ineffectual and unnecessary; the appeal therefore is moot and must be dismissed. We decline defendants' invitation to consider the contracts as evidence on appeal since they are not part of the record. As hereinafter discussed, even if we received the contracts into evidence the appeal would not be dismissed as moot.

▇▇▇ "As a general rule, when an event has occurred pending appeal from a lower court judgment which renders it impossible for the appellate court to grant an appellant any effectual relief whatever, the appeal will be dismissed as moot. [Citation.] There is a significant exception to this rule, however, where the appeal raises an important issue that is likely to recur, yet evade review. [Citations.] If an action involves a matter of continuing public interest and the issue is likely to recur, a court may exercise an inherent discretion to resolve that issue, even though an event occurring during its pendency would normally render the matter moot." (*Schraer* v. *Berkeley Property Owners' Assn.* (1989) 207 Cal.App.3d 719, 728 [255 Cal.Rptr. 453], internal quotation marks omitted; see also *Fallbrook Sanitary Dist.* v. *San Diego Local Agency Formation Com.* (1989) 208 Cal.App.3d 753, 757 [256 Cal.Rptr. 590].)

▇▇▇ While the validity of plan B is of immediate interest to the NFL, its 28 member teams and the players, the issue is also of general public interest because of the popularity of professional football. The issues of the validity of Plan B and its alleged effect on plaintiff's right to work as a professional football player are likely to recur. Accordingly, we decline to dismiss the appeal as moot and proceed to a consideration of its merits.

## II

## DEMURRER PROPERLY SUSTAINED

The commerce clause provides that "Congress shall have Power . . . [t]o regulate Commerce . . . among the several States." (U.S. Const., art. I, § 8,

cl. 3.) ■ Even without implementing legislation by Congress, the commerce clause is a limitation on the power of the states. (*Edgar* v. *MITE Corp.* (1982) 457 U.S. 624, 640 [73 L.Ed.2d 269, 281, 102 S.Ct. 2629].) Cases interpreting the commerce clause "reflect the Constitution's special concern both with the maintenance of a national economic union unfettered by state-imposed limitations on interstate commerce and with the autonomy of the individual States within their respective spheres." (*Healy* v. *The Beer Institute, Inc.* (1989) 491 U.S. 324, 335-336 [105 L.Ed.2d 275, 287-288, 109 S.Ct. 2491], fns. omitted.) While various tests have been employed to express the distinction between permissible and impermissible impact of state legislation on interstate commerce, "experience teaches that no single conceptual approach identifies all of the factors that may bear on a particular case." (*Raymond Motor Transportation, Inc.* v. *Rice* (1978) 434 U.S. 429, 441 [54 L.Ed.2d 664, 674-675, 98 S.Ct. 787], fn. omitted.)

■ In sustaining the demurrer to plaintiff's amended complaint, the trial court concluded that the present action is governed by *Partee* v. *San Diego Chargers Football Co.* (1983) 34 Cal.3d 378 [194 Cal.Rptr. 367, 668 P.2d 674], wherein our Supreme Court held that the commerce clause precludes application of California's antitrust law (the Cartwright Act, Bus. & Prof. Code, § 16700 et seq.) to professional football.

In *Partee*, a professional football player who played for a team member of the NFL sued the team for damages, alleging that the NFL's operating rules, including the Rozelle Rule, violated the Cartwright Act. In reversing judgment for plaintiff the court noted that the NFL is engaged in interstate commerce and concluded that application of California's antitrust law to professional football would constitute an unreasonable burden on interstate commerce. In reaching this conclusion the court pointed to similarities between professional baseball's reserve system and the attributes of the NFL rules and practices challenged by plaintiff, and quoted the following passage from *Flood* v. *Kuhn* (2d Cir. 1971) 443 F.2d 264, affd. 407 U.S. 258 [32 L.Ed.2d 728, 92 S.Ct. 2099], which held that state antitrust laws are not applicable to professional baseball: " '[W]here the nature of an enterprise is such that differing state regulation, although not conflicting, requires the enterprise to comply with the strictest standard of several states in order to continue an interstate business extending over many states, the extra-territorial effect which the application of a particular state law would exact constitutes, absent a strong state interest, an impermissible, burden on interstate commerce.' (*Id.*, at p. 267.)" (*Partee, supra,* 34 Cal.3d at p. 383.)

Applying the foregoing test to the case before it, the *Partee* court stated: "Professional football is a nationwide business structured essentially the

same as baseball. Professional football's teams are dependent upon the league playing schedule for competitive play, just as in baseball. The necessity of a nationwide league structure for the benefit of both teams and players for effective competition is evident as is the need for a nationally uniform set of rules governing the league structure. Fragmentation of the league structure on the basis of state lines would adversely affect the success of the competitive business enterprise, and differing state antitrust decisions if applied to the enterprise would likely compel all member teams to comply with the laws of the strictest state. [Citation.] [¶] We are satisfied that national uniformity required in regulation of baseball and its reserve system is likewise required in the player-team-league relationships challenged by Partee and that the burden on interstate commerce outweighs the state interests in applying state antitrust laws to those relationships." (*Partee* v. *San Diego Chargers Football Co., supra,* 34 Cal.3d at pp. 384-385.)

We agree that *Partee* is controlling and requires dismissal of plaintiff's amended complaint for failure to state a cause of action.

Plaintiff insists that *Partee* is inapplicable for several reasons. First, plaintiff contends that *Partee* considered the effect of California's antitrust laws on interstate commerce, while the issue in this case is whether the commerce clause precludes enforcement of provisions of California's constitution and statutory law which guarantee plaintiff the right to engage in his chosen profession. (Cal. Const., art. I, § 1; Bus. & Prof. Code, § 16600.)[3] In *Partee* one of the NFL operating rules alleged to violate the Cartwright Act was the Rozelle Rule. As alleged in the amended complaint, the Rozelle Rule was the predecessor of Plan B and, like Plan B, restrained competition among the NFL teams for players' services. Under the Rozelle Rule an NFL team could obtain the services of a player whose contract with another team had expired (veteran free agent) only by paying some form of compensation to the latter team. The added feature of Plan B is that an NFL team may prevent a veteran free agent from moving to another team by exercising a right of first refusal and matching a competing team's offer to the veteran free agent. This practice, too, is alleged to constitute a "system of restraints" with "severe anticompetitive effects." Indeed, section 16600, the basis of plaintiff's cause of action, is included in the same part of the

---

[3]California Constitution, article I, section 1 reads: "All people are by nature free and independent and have inalienable rights. Among these are enjoying and defending life and liberty, acquiring, possessing, and protecting property and pursuing and obtaining safety, happiness, and privacy." The right to work, either in employment or independent business, is protected by this provision. (*Bautista* v. *Jones* (1944) 25 Cal.2d 746, 749 [155 P.2d 343].)

Business and Professions Code section 16600 provides: "Except as provided in this chapter [chapter 1, Contracts in Restraint of Trade], every contract by which anyone is restrained from engaging in a lawful profession, trade, or business of any kind is to that extent void."

Business and Professions Code (pt. 2 [Preservation and Regulation of Competition] of div. 7 [General Business Regulations]) as the Cartwright Act, the basis of the cause of action in *Partee*. Plaintiff's additional reliance on a provision of the California Constitution cannot disguise the fact that the alleged deprivation of his right to work as a professional football player is included in the rights alleged in *Partee* to constitute a violation of the Cartwright Act, which *Partee* held may not be enforced because of its impermissible burden on interstate commerce.

Plaintiff further contends that "use of the facts in *Partee* against [him]" is an improper application of the doctrine of collateral estoppel. (See *Lewis* v. *County of Sacramento* (1990) 218 Cal.App.3d 214, 217-218 [266 Cal.Rptr. 678].) The contention is without merit. ■ *Partee* is conclusive in the present action not because of collateral estoppel but because of stare decisis which requires us to follow the decisions of the California Supreme Court. (*Auto Equity Sales, Inc.* v. *Superior Court* (1962) 57 Cal.2d 450, 455 [20 Cal.Rptr. 321, 369 P.2d 937].) "Our statements of law remain binding on the trial and appellate courts of this state [citations] and must be applied wherever the facts of a case are not fairly distinguishable from the facts of the case in which we have declared the applicable principle of law." (*People* v. *Triggs* (1973) 8 Cal.3d 884, 890-891 [106 Cal.Rptr. 408, 506 P.2d 232] disapproved on another point in *People* v. *Lilienthal* (1978) 22 Cal.3d 891, 896, fn. 1 [150 Cal.Rptr. 910, 587 P.2d 706].) Inasmuch as *Partee* is not distinguishable factually from the instant case, we must apply the law declared in *Partee*, i.e.: California's antitrust laws may not be applied to the player-team-league relationship of the NFL because to do so would impose an impermissible burden on interstate commerce.

■ Plaintiff next argues that defendant's commerce clause challenge requires a balancing test on the basis of a fully developed factual record and cannot be determined on a demurrer, the function of which is to test the sufficiency of a complaint as a matter of law. (*Pacifica Homeowners' Assn.* v. *Wesley Palms Retirement Community* (1986) 178 Cal.App.3d 1147, 1151 [224 Cal.Rptr. 380].) What plaintiff characterizes as a "balancing test" is expressed as follows in *Pike* v. *Bruce Church, Inc.* (1970) 397 U.S. 137, 142 [25 L.Ed.2d 174, 178, 90 S.Ct. 844]: "Where the statute regulates evenhandedly to effectuate a legitimate local public interest, and its effects on interstate commerce are only incidental, it will be upheld unless the burden imposed on such commerce is clearly excessive in relation to the putative local benefits." *Partee* cited *Pike*, applied the criteria set forth therein, and concluded that the burden on interstate commerce outweighs California's interests in applying its antitrust laws to the player-team-league relationships

of the NFL.[4] (*Partee* v. *San Diego Chargers Football Co., supra,* 34 Cal.3d at pp. 382, 385.) While the appeal in *Partee* was from a judgment for damages, the court did not rely on evidence adduced at the trial but instead reached its conclusion as a matter of law.

Plaintiff nevertheless insists that the demurrer raised questions of fact and the trial court therefore improperly upheld the commerce clause defense by sustaining the demurrer. In support of this contention plaintiff cites *Raymond Motor Transportation, Inc.* v. *Rice, supra,* 434 U.S. 429, wherein it was stated: "Commerce Clause adjudication must depend in large part 'upon the thoroughness with which lawyers perform their task in the conduct of constitutional litigation. Here, as in many other fields, constitutionality is conditioned upon the facts, and to the lawyers the courts are entitled to look for garnering and presenting the facts.' [Citation.]" (*Id.,* at pp. 447-448, fn. 25 [54 L.Ed.2d at p. 679].) In *Raymond Motor Transportation* the question presented was whether the commerce clause was violated by Wisconsin regulations which generally prevented the operation of trucks longer than 55 feet and double-trailer trucks on highways within the state. The answer to that question depended upon whether the burden placed on interstate commerce by the regulations was outweighed by the state's interest in promoting safety on its highways. Obviously, evidence was necessary to show the connection between the regulations and the promotion of highway safety. In the present case no evidence was required to establish that enforcement of plaintiff's alleged right to work under California law would constitute an impermissible burden on interstate commerce. As previously noted, *Partee* in effect so holds and we are bound by that holding. The commerce clause defense was properly raised and determined by way of demurrer.

### III

### LEAVE TO AMEND PROPERLY DENIED

█ Sustaining a general demurrer without leave to amend is not an abuse of discretion if it appears from the complaint that under applicable substantive law there is no reasonable probability that the defect can be

---

[4]Plaintiff argues that the state laws sought to be enforced in this action, and challenged as unconstitutional, embody not mere economic regulation but rather the fundamental right to work guaranteed by California to its residents; accordingly, the result of the balancing test performed by the court in *Partee* is inapplicable here. We do not agree. This action does not advance the compelling state interest of promoting the health or safety of its citizens. (See *Raymond Motor Transportation, Inc.* v. *Rice, supra,* 434 U.S. 429, 443 [54 L.Ed.2d 664, 676].) Under the facts alleged plaintiff seeks to advance his economic interest by obtaining "a competitive market value" for his services. While that interest may be legitimate, it is less compelling than California's interest in enforcing its antitrust laws. (*City of Oakland* v. *Oakland Raiders* (1985) 174 Cal.App.3d 414, 421-422 [220 Cal.Rptr. 153].)

cured by amendment. (*C & H Foods Co.* v. *Hartford Ins. Co.* (1984) 163 Cal.App.3d 1055, 1062 [211 Cal.Rptr. 765].) That is the situation here.

█ Plaintiff sought leave to amend by alleging that even though plaintiff was not "protected" by the Saints for the 1991-1992 football season, after this action was filed the Saints took the position that plaintiff remained their property and was not free to negotiate with any other team. Matters which occur after the filing of a complaint may not be alleged by amendment to the complaint, but must be brought into the action by means of a supplemental complaint. (Code Civ. Proc., § 464; *Earp* v. *Nobmann* (1981) 122 Cal.App.3d 270, 286-287 [175 Cal.Rptr. 767], disapproved on other grounds in *Silberg* v. *Anderson* (1990) 50 Cal.3d 205, 212-213 [266 Cal.Rptr. 638, 786 P.2d 365].) The filing of a supplemental complaint requires a noticed motion. (*Earp* v. *Nobmann*, *supra*, 122 Cal.App.3d at p. 287; 5 Witkin, Cal. Procedure (3d ed. 1985) Pleading, § 1167, p. 589.) Plaintiff did not move for leave to file a supplemental complaint. In any event, the facts outlined did not merely supplement the allegations of the amended complaint with subsequent events; they indicated a new and different cause of action against the Saints, not a party to the action. For this reason also, denial of leave to amend was proper. (See *Flood* v. *Simpson* (1975) 45 Cal.App.3d 644, 647 [119 Cal.Rptr. 675].)

## DISPOSITION

The judgment is affirmed.

Johnson, J., and Woods (Fred), J., concurred.