Filed 7/23/15  Certified for Publication 8/24/15 (order attached)

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

# FOURTH APPELLATE DISTRICT

# DIVISION TWO

| | |
|---|---|
| ALAMO RECYCLING, LLC et al., | |
| Plaintiffs and Appellants, | E060392 |
| v. | (Super.Ct.No. CIVRS1303347) |
| ANHEUSER BUSCH INBEV WORLDWIDE, INC. et al., | O P I N I O N |
| Defendants and Respondents. | |

APPEAL from the Superior Court of San Bernardino County.  Joseph R. Brisco, Judge.  Affirmed.

Gugliotta & Associates and John C. Gugliotta for Plaintiffs and Appellants.

Akin Gump Strauss Hauer & Feld, Edward A. Woods, Pratik A. Shah, and James E. Tysse for Defendants and Respondents The Coca-Cola Company, Coca-Cola Refreshments USA, Inc., Nestle Holdings, Inc., Nestle Waters North America, Inc.,

Nestle Waters North America Holdings, Inc., Nestle USA, Inc., Cott Beverages, Inc., Pepsico, Inc., Pepsico Sales, Inc., Pepsi-Cola Advertising and Marketings, Inc., Pepsi-Cola Management and Administrative Services, Inc., Pepsi-Cola Sales and Distribution, Inc., Pepsi-Cola Technical Operations, Inc., Pepsi-Cola National Marketing, LLC, Dr Pepper Snapple Group, Inc., Dr Pepper/Seven Up, Inc., Dr Pepper/7-Up Bottling Company of the West, and Snapple Beverage Corp.

Skadden, Arps, Slate, Meagher & Flom, Jason D. Russell and Kimberley M. Miller for Defendants and Respondents Anheuser-Busch InBev Worldwide Inc. and Anheuser-Busch, LLC.

Nixon Peabody and Bruce E. Copeland for Defendants and Respondents Constellation Brands, Inc., Constellation Brands U.S. Operations, Inc., and Crown Imports, LLC.

Quarles & Brady, Brian A. Howie; Reid & Hellyer and Michael G. Kerbs for Defendants and Respondents MillerCoors LLC and Pabst Brewing Company.

## I. INTRODUCTION

Plaintiffs Alamo Recycling, LLC (Alamo) and Chino Valley Recycling, LLC (Chino) operate "recycling center[s]" where beverage containers sold in California may be redeemed for their "California Redemption Value."  In this action, plaintiffs sued defendant Anheuser Busch Inbev Worldwide, Inc. and other companies that sell or

distribute beverages containers in California (the Beverage Companies or defendants).[1] The trial court sustained defendants' general demurrer to the complaint without leave to amend (Code Civ. Proc., § 430.10, subd. (e)), dismissed the complaint, and entered judgment in favor of defendants. Plaintiffs appeal.

The gravamen of the complaint is that defendants knowingly and "falsely" label beverage containers *sold both inside and outside* California with "CA CRV," "California Redemption Value," or similar labels when, in fact, under California law, only containers purchased *inside* California may be redeemed in California. The complaint alleges that containers sold outside California are transported into California and redeemed at recycling centers like those operated by plaintiffs, and this exposes plaintiffs to state regulatory fines and penalties, risks rendering the "California Beverage Recycling Fund" insolvent, and thereby risks the economic viability of plaintiffs' recycling businesses.

---

[1] Defendants and respondents include Anheuser-Busch InBev Worldwide Inc., Anheuser-Busch, LLC, The Coca-Cola Company, Coca-Cola Refreshments USA, Inc., Nestle Holdings, Inc., Nestle Waters North America, Inc., Nestle Waters North America Holdings, Inc., Nestle USA, Inc., Cott Beverages, Inc., Pepsico, Inc., Pepsico Sales, Inc., Pepsi-Cola Advertising and Marketings, Inc., Pepsi-Cola Management and Administrative Services, Inc., Pepsi-Cola Sales and Distribution, Inc., Pepsi-Cola Technical Operations, Inc., Pepsi-Cola National Marketing, LLC, Dr Pepper Snapple Group, Inc., Dr Pepper/Seven Up, Inc., Dr Pepper/7-Up Bottling Company of the West, Snapple Beverage Corp., Constellation Brands, Inc., Constellation Brands U.S. Operations, Inc., Crown Imports, LLC, MillerCoors LLC, and Pabst Brewing Company.

Before the trial court sustained the Beverage Companies' general demurrer, plaintiffs dismissed their complaint, without prejudice, against Molson Coors Brewing Company, Molson Coors International, LP, Coors Brewing Company, and Miller Brewing Company.

Based on this allegation, the complaint alleges common law tort claims against defendants for fraud, negligent misrepresentation, strict products liability, interference with prospective economic advantage and business relations, and breach of express warranty.  As remedies, plaintiffs seek to permanently enjoin defendants from selling beverage containers in California as long as defendants continue to label containers sold outside California with "CA CRV" or other California redemption marks.  Plaintiffs also seek "[s]pecial damages apportioned by the market share of each defendant," general damages according to proof, and other damages.  For the reasons we explain, the injunctive and compensatory relief plaintiffs seek cannot be awarded by a California court because it would violate the "dormant" commerce clause of the federal Constitution.  We therefore affirm the judgment of dismissal.

## II.  BACKGROUND

A.  *Statutory and Regulatory Background:  The California Beverage Container Recycling and Litter Reduction Act*

California is one of 10 states that seek to promote recycling through a beverage container redemption program.  The California Beverage Container Recycling and Litter Reduction Act (the Recycling Act or Act) (Pub. Resources Code, § 14500 et seq.) establishes a comprehensive program "to encourage increased, and more convenient, beverage container redemption opportunities for all consumers."  (*Id.*, § 14501, subd. (a).)  One of the stated purposes of the Act is "to create and maintain a marketplace

4

where it is profitable to establish sufficient recycling centers and . . . enhance the profitability of recycling centers . . . ." (*Id.*, § 14501, subd. (f).)

The Act covers beer, wine coolers, carbonated water, soft drinks, and coffee and tea drinks sold in aluminum, glass, plastic, or bimetal containers. (Pub. Resources Code, § 14504.) The Act encourages recycling the containers "through a program of financial incentives" (*Californians Against Waste v. Department of Conservation* (2002) 104 Cal.App.4th 317, 319, citing Pub. Resources Code, § 14501) designed "to balance the competing interests of the varied participants in the beverage container and recycling industries" (*Shamsian v. Department of Conservation* (2006) 136 Cal.App.4th 621, 627).

All beverage containers covered by the Act and sold in California are assigned a redemption value. (Pub. Resources Code, § 14560.) The Act requires that manufacturers label each such container offered for sale in California with one of five markings—"CA Redemption Value," "California Redemption Value," "CA Cash Refund," "California Cash Refund," or "CA CRV," by "either printing or embossing the beverage container or by securely affixing a clear and prominent stamp, label, or other device to the beverage container." (*Id.*, §§ 14560, 14561, subd. (a).)

The Act authorizes the California Department of Resources Recycling and Recovery (the Department) to promulgate regulations prescribing more precise labeling requirements for beverage containers. (Pub. Resources Code, § 14561, subd. (d).) The regulations specify that a label must display the redemption message "[c]learly and [p]rominently" in a manner that is "distinguishable from refund messages of other states"

5

placed on the same containers. (Cal. Code Regs., tit. 14, § 2000, subd. (a)(9).) The Act

prohibits a beverage manufacturer from selling to a consumer in California any beverage

that fails to meet the labeling requirements of the Act. (Pub. Resources Code, § 14561,

subd. (c).)

The Act requires beverage distributors to make "redemption payment(s)" to the

Department for each covered beverage container sold to retailers in California. (Pub.

Resources Code, § 14560.) The beverage distributors' payments are deposited into the

California Beverage Container Recycling Fund. (See *id.*, § 14580.) Thus, the cost of the

redemption payments is borne by the beverage distributors. To encourage recycling, the

Act requires that consumers be paid a prescribed refund value (commonly, 5 cents per

container) when they return and redeem empty beverage containers at retail

establishments or recycling centers certified by the Department. (*Id.*, §§ 14538, 14570-

14575.5; see also Cal. Code Regs., tit. 14, § 2500.) Certified recycling centers may then

sell the redeemed beverage containers to a certified "processor" who recycles them.

(Pub. Resources Code, § 14518.) The processor pays the recycling center the refund

value of the beverage container, plus a designated amount for administrative and

processing costs. (*Id.*, § 14573.5, subd. (a).) The Department, in turn, pays the processor

the refund value, plus another designated amount for administrative and processing costs

for each container it obtains from a recycling center. (*Id.*, § 14573, subd. (a).) This

tiered payment scheme ensures that the beverage distributors' initial funding provides

6

economic incentives to recycle throughout the chain from consumers to retailers, recycling centers, and ultimately processors.

The Act confines its operation to covered activities within the State of California and only to the extent permitted by federal law.  (See Pub. Resources Code, §§ 14529, 14529.7, 14501.5.)  The Act "is applicable uniformly throughout the state" of California and "occupies the whole field of regulation of recycling-related refund values, redemption payments, deposits, and similar fees relating to beverage containers . . . ." (*Id.*, § 14529.)  Neither the Act nor its implementing regulations prohibit out-of-state beverage containers from being labeled with "California Redemption Value," or the redemption value for any other state.  The regulations recognize that containers "imported into this State" may be "labeled with the message required in Section 14561 of the Act," e.g., "CA CRV," but provide that such containers "are not eligible for any refund value payments."  (See Cal. Code Regs., tit. 14, § 2501, subd. (f) ["Certified recycling centers shall not receive, accept, or take delivery from any source material that the certified recycling center knows, or should know, was imported into this State, *whether labeled with the message required in Section 14561 of the Act or not*"], italics added.)

The Act is enforced by the Department's Division of Recycling (CalRecycle) and prescribes penalties for violating its comprehensive statutory and regulatory scheme. (See Pub. Resources Code, §§ 14591-14594.5.)  Violations of the Act are generally punishable by a fine (*id.*, § 14591, subd. (a)), and in the case of fraud, by a fine and

7

imprisonment (*id.*, § 14591, subd. (b)).  The Act empowers CalRecycle to assess civil penalties (*id.*, § 14591.1), seek restitution of funds illegally paid (*id.*, § 14591.4), issue cease and desist orders (*id.*, § 14591.6, subd. (a)), and request that the California Attorney General seek injunctive relief against further violations (*id.*, § 14591.6, subd. (e)).

Chapter 8.5 of the Act titled, Reporting Requirements and Payment Prohibitions Related to Out-Of-State and Other Ineligible Containers (Pub. Resources Code, §§ 14595-14599), comprehensively addresses the central issue in plaintiffs' complaint: fraudulent attempts to redeem beverage containers in California that—though properly marked California redemption value—are ineligible for redemption in California either because they were sold out of state or because they are otherwise ineligible under the Act. The Legislature specifically noted the risk that some persons would attempt to redeem "beverage container material imported from out of state" or that was otherwise ineligible. (*Id.*, § 14595.)  The Act provides that it is "the intent of the Legislature that no refund value or other recycling program payments be paid to any person for this [ineligible] material" and that "any person participating in conduct intended to defraud the state's beverage container recycling program shall be held accountable for that conduct."  (*Ibid*.)

Among other things, the Act prohibits any person from paying, claiming, or receiving any refund or other fee for "[b]everage container material that the person knew, or should have known, was imported from out of state." (Pub. Resources Code, § 14595.5, subd. (a)(1).)  Nor may any person, with intent to defraud, "[r]edeem or attempt to redeem an out-of-state container," "[b]ring an out-of-state container . . . to the

8

marketplace for redemption," or "[r]eceive, store, transport, distribute, or otherwise facilitate or aid in the redemption of a[n] . . . out-of-state container[.]" (*Id.*, § 14595.5, subd. (a)(2).)

The Act and related regulations task certified recycling centers, such as plaintiffs, with monitoring redemptions for refund eligibility and fraud, including through stringent reporting and inspection requirements. (Pub. Resources Code, § 14596.) Recycling centers are required to "inspect each load of containers, subject to the Act, delivered to the recycling center, for which refund value is claimed, to determine whether the load is eligible for any refund value and, if so, to determine whether the load is segregated or commingled" with out-of-state (or otherwise ineligible) containers. (Cal. Code Regs., tit. 14, § 2501, subd. (a).)

A recycling center is prohibited from taking "delivery from any source material that [it] knows, or should know, was imported into this State, whether labeled with the [statutory marking] or not" (Cal. Code Regs., tit. 14, § 2501, subd. (f); see also *id.*, § 2831.2 [declaring such imported material "ineligible for refund value"]); paying refund value to any noncertified person or entity delivering a load of material in excess of 100 pounds of aluminum or plastic beverage containers, or 1,000 pounds of glass beverage containers, per day (*id.*, § 2535, subd. (f)); and paying refund value for a load if "[t]he motor vehicle, if any, used to deliver the load has a license plate from any foreign country, or any state other than California, unless" exceptions relating to the identity of the recycler and the maximum total refund value apply (*id.*, § 2501, subd. (b)(3)).

9

The Act defines an "[o]ut-of-state container" as "a used beverage container or used beverage container component that is not subject to [Public Resources Code] Section 14560 [assigning redemption values], and that is brought into this state." (Pub. Resources Code, § 14515.1.) In 2012, the Act was amended to impose additional requirements to deter would-be importers of out-of-state containers (see *id.*, § 14596), and to grant emergency power to the Department to augment inspection and reporting requirements for recycling centers and other entities (see, e.g., Cal. Code Regs., tit. 14, §§ 2831, subd. (b) [inspection requirements], 2835, subd. (c) [reporting requirements]). In emergency regulations, CalRecycle noted that, "[a]lthough imported empty beverage containers often contain the CRV message, they do not qualify for CRV because they were not sold in California." (See CalRecyle, Emergency Regs., Imported Empty Container Material, Finding of Emergency, Informative Digest <http://www.calrecycle. ca.gov/laws/rulemaking/archive/2014/Imports/RuleDocs/Emergency.pdf> [as of July 23, 2015].)

B. *The Allegations of Plaintiffs' Complaint for Damages and Injunctive Relief*

The complaint alleges a total of seven common law tort causes of action against the Beverage Companies, namely: (1) fraud; (2) negligent misrepresentation; (3) strict products liability for defective design; (4) strict products liability for failure to warn; (5) breach of express warranty; (6) intentional interference with prospective economic relations; and (7) negligent interference with prospective economic advantage.

10

Plaintiffs seek special, general, punitive, and exemplary damages "apportioned by the market share of each defendant." Plaintiffs also seek a permanent injunction prohibiting defendants "from selling and/or distributing beverages within[] the [S]tate of California, until such time as said defendants discontinue the improper labeling of beverage containers." Plaintiffs' claims are based on their assertion that the Beverage Companies "distribute and/or sell beverages in . . . beverage containers which are improperly and falsely labeled 'CA Redemption Value,' 'California Redemption Value,' 'CA Cash Refund,' 'California Cash Refund,' or 'CA CRV'" "in parts of the United States, other than California, including but not limited to Arizona and/or Nevada . . . ." Plaintiffs allege the containers so labeled are "false" because some "used beverage containers sold in states other than California, such as Arizona and Nevada where there is no beverage deposit or beverage redemption law" are "regularly . . . transported to California to be illegally sold and redeemed at recycling centers" such as plaintiffs' recycling centers in the cities of Chino and Fontana.

Plaintiffs further allege that the Beverage Companies "mislabeled" the containers they sold outside of California "because they were aware that these beverage containers would be purchased by California residents crossing state lines with the intent to avoid the deposit and would be then transported across the border to the [S]tate of California, consumed and then redeemed at recycling facilities, such as Alamo and Chino." Plaintiffs cite an alleged incident, "on or about January of 2011," when plaintiffs paid California redemption value for illegally imported out-of-state beverage containers.

11

Plaintiffs do not name any of the individuals who transported or redeemed any out-of-state containers in California, nor do they contend the Beverage Companies are among, or in conspiracy with, those who illegally attempted to redeem such out-of-state containers. Instead, plaintiffs allege the Beverage Companies "knew or should have known" that such illegal redemption activities would be undertaken by unnamed third party actors.

The complaint alleges that plaintiffs Alamo and Chino were the subject of recent enforcement actions by CalRecycle: "Alamo received an accusation from CalRecycle alleging among other things, Alamo's receipt and payment of redemption value for used beverage containers originating from outside the State of California." According to CalRecycle, in January 2011, Alamo "facilitated" the redemption of out-of-state containers that originated in Phoenix, Arizona, which resulted in "the arrest and criminal conviction of eight of the individuals involved in the recycling fraud." CalRecycle also noted that, over a three week period that same month, "there were at least 19 occasions when [Alamo] purchased more than 500 pounds of aluminum beverage containers from an individual, operation or entity in a single day," in violation of Department regulations. "Based on the volume and frequency of the loads being delivered," CalRecycle charged, Alamo "knew, or should have known, that this material was far in excess of what could be anticipated from consumer transactions and that they were purchasing ineligible material." As a result, CalRecycle revoked Alamo's certification to operate two recycling centers and also imposed civil penalties and restitution.

12

The complaint similarly alleges that plaintiff "Chino received from CalRecycle a notice of revocation of Chino's probationary certification to pay redemption value for used beverage containers in California." CalRecycle issued that notice on the ground that Chino "was receiving unusually large loads of aluminum beverage containers on a daily basis" and was involved in one redemption in which nine suspects were arrested (seven of whom pleaded guilty) on violations of grand theft, conspiracy, and recycling fraud. The notice also alleged that Chino: (1) paid and claimed refund values on ineligible beverage containers that Chino knew, or should have known, came from noncertified recyclers or from outside the State; (2) paid refund values to a person, operation, or entity not certified by CalRecycle that was delivering loads of aluminum beverage containers in excess of 500 pounds in a single day, in violation of state regulations; and (3) on at least three occasions, failed to properly inspect each load of containers for eligibility prior to determining the basis for payment, in violation of state regulations.

At defendants' request, the trial court took judicial notice that, in February 2013, plaintiffs entered into separate settlement agreements with the Department, resolving the Department's administrative charges against plaintiffs. Under the terms of the settlement agreements, Alamo's recycling center certificate became probationary for a minimum of five years and Chino's revoked recycling center certificate was reinstated as probationary for a minimum of five years. As restitution, each plaintiff agreed to pay $62,500 to the California Beverage Container Recycling Fund.

13

C. *The Demurrer and the Trial Court's Ruling*

Defendants jointly demurred to the complaint on the grounds: (1) it failed to state a cause of action (general demurrer), and (2) its allegations were ambiguous, unintelligible, and uncertain. (Code Civ. Proc., § 430.10, subds. (e), (f).) In support of their general demurrer, defendants argued that the "dormant" commerce clause of the federal Constitution "precludes the use of state law to regulate out-of-state beverage marketing and sales, as [p]laintiffs attempt to do through their Complaint . . . . Moreover, California's presumption against extraterritoriality categorically precludes [p]laintiffs' claims."[2] Defendants also argued the complaint failed to allege at least one element of each alleged tort claim.

Regarding uncertainty, defendants argued the complaint was uncertain and unintelligible because it was "pleaded in generalities and legal conclusions. It fails to disclose which actions of any particular [d]efendant[] had any impact on [p]laintiffs. Plaintiffs also fail to specify how any one of the [d]efendants was responsible for, or had

_____

[2] At defendants' request, the trial court took judicial of the following exhibits: (1) a first amended accusation filed by the Department against plaintiff Alamo on March 19, 2012; (2) a letter sent by the Department on May 17, 2012, to plaintiff Chino, terminating Chino's probationary certificate to operate a recycling center; (3) the stipulated settlement agreement and final agency decision filed by plaintiff Alamo and the Department on February 23, 2013; (4) the stipulated settlement agreement and final agency decision filed by plaintiff Chino and the Department on February 23, 2013; (5) the Department's official statement of guidance on California beverage container labeling requirements titled *California Beverage Container Labeling*; and (6) two orders of the United States District Court for the Southern District of New York, filed, respectively, on May 29, 2009 and October 23, 2009, in the case styled *International Bottled Water Association v. Paterson*, No. 09 Civ. 4672 (DAB).

14

specific beverage containers involved in any way, in a fraudulent redemption at [p]laintiffs' recycling centers." Finally, defendants asked the court not to adjudicate plaintiffs' claims for injunctive relief on the grounds the claims "would 'drag a court of equity into an area of complex economic policy,'" the claims would interfere with the regulatory functions of an administrative agency, and enforcing the injunction would be unduly burdensome for the court.

Following a hearing, the court overruled the demurrer on uncertainty grounds, noting in its minute order that the "Complaint is not so uncertain that defendants cannot understand what is being alleged against them." The court sustained the general demurrer, however, after concluding plaintiffs' claims, or the relief plaintiffs were seeking by their complaint, was precluded by the commerce clause of the federal Constitution. Accordingly, the court dismissed the complaint and entered judgment in favor of defendants. This appeal followed.

## III. DISCUSSION

A. *Standard of Review on Demurrer*

A general demurrer tests the legal sufficiency of a complaint by claiming it fails to state a cause of action based on defects appearing on its face or from matters subject to judicial notice. (*Blank v. Kirwan* (1985) 39 Cal.3d 311, 318; *County of Fresno v. Shelton* (1998) 66 Cal.App.4th 996, 1008-1009.) In other words, a general demurrer "'searches the complaint for all defects going to the existence of a cause of action and places at issue the legal merits of the action on assumed facts.'" (*Melton v. Boustred* (2010) 183

15

Cal.App.4th 521, 528.)  On appeal, we are not bound by the trial court's determination but independently review the complaint to determine whether it states a cause of action under any legal theory.  (*Banis Restaurant Design, Inc. v. Serrano* (2005) 134 Cal.App.4th 1035, 1038-1039.)

Our review of the legal sufficiency of the complaint is guided by well settled rules: we assume the truth of all properly pleaded material facts and consider judicially noticed matters, but we disregard asserted conclusions of fact and law.  (*Blank v. Kirwan*, *supra*, 39 Cal.3d at p. 318.)  We give the complaint a reasonable interpretation, reading it as a whole and its parts in context.  (*Ibid*.)  And when, as here, a general demurrer was sustained without leave to amend, we determine whether the plaintiff has met its burden of demonstrating a reasonable possibility that the complaint can be amended to state a cause of action.  If so, we reverse, and if not, we affirm.  (*Ibid*.)

B.  *The Parties' Claims on Appeal*

Plaintiffs point out that, "[a]t its core, this case is about [defendants] knowingly and negligently selling a product [i.e., 'falsely' labeled beverage containers] that [defendants] know will be brought into California and cause injury to the people, businesses, and taxpayers of California."  More specifically, plaintiffs argue that, because no one can tell the difference between beverage containers purchased inside and outside California when all such containers are labeled "CA CRV" or similarly, defendants' "mislabeling" of the out-of-state containers exposes plaintiffs to fines and penalties under the Act, risks the insolvency of the California Beverage Container Recycling Fund, and

thereby risks the economic viability of plaintiffs' recycling businesses.  Defendants argue, as they did in the trial court, that the damages and injunctive relief plaintiffs seek by their complaint are barred by the "dormant" commerce clause of the federal Constitution.  For the reasons we explain, we agree.

C.  *Analysis*

"The Commerce Clause empowers Congress '[t]o regulate Commerce . . . among the several states.'" (*McBurney v. Young* (2013) ___ U.S. ___ [133 S.Ct. 1709, 1719] (*McBurney*); U.S. Const., art. I., § 8, cl. 3.)  The commerce clause reflects "'the Constitution's special concern both with the maintenance of a national economic union unfettered by state-imposed limitations on interstate commerce and with the autonomy of the individual States within their respective spheres.'" (*Hebert v. Los Angeles Raiders, Ltd.* (1991) 23 Cal.App.4th 414, 422, quoting *Healy v. Beer Institute* (1989) 491 U.S. 324, 335-336 (*Healy*).)  Though the commerce clause imposes no express constraints "on 'the several States,'" the United States Supreme Court has long inferred that the clause imposes *implicit* limitations on state power, and these limitations are embodied in a judge-made doctrine known as the "negative" or "dormant" commerce clause. (*McBurney*, *supra*, at p. 1719.)

The high court's dormant commerce clause jurisprudence "'significantly limits the ability of States and localities to regulate or otherwise burden the flow of interstate commerce.'" (*McBurney*, *supra*, 133 S.Ct. at p. 1719, citing *Maine v. Taylor* (1986) 477 U.S. 131, 151.)  As indicated, the dormant commerce clause doctrine "is driven by a

17

concern about 'economic protectionism—that is, regulatory measures designed to benefit in-state economic interests by burdening out-of-state competitors.' [Citations.]" (*McBurney*, *supra*, at p. 1719.) "'The crucial inquiry,'" in determining whether a state law violates the dormant commerce clause, is whether the statute, "'is basically a protectionist measure, or whether it can fairly be viewed as a law directed to legitimate local concerns, with effects upon interstate commerce that are only incidental.'" (*Id.* at pp. 1719-1720, citing *Philadelphia v. New Jersey* (1978) 437 U.S. 617, 624.)

More broadly, the high court in *Healy* explained that, taken together, its dormant commerce clause cases "stand at a minimum" for the three propositions. (*Healy*, *supra*, 491 U.S. at p. 336.) First, a state law violates the commerce clause if it applies to commerce that takes place wholly outside of the state's borders, regardless of whether the commerce has effects within the state. (*Id.* at p. 336, citing *Edgar v. MITE Corp.* (1982) 457 U.S. 624, 642-643.) Second, a state law that "directly controls" commerce occurring wholly outside the state's borders is invalid regardless of whether the law's extraterritorial reach was intentional. (*Healy*, *supra*, at p. 336, citing *Brown-Forman Distillers Corp. v. New York State Liquor Authority* (1986) 476 U.S. 573, 579 [A statute that "directly regulates or discriminates against interstate commerce . . . is virtually *per se* invalid under the Commerce Clause"].) Third, "the practical effect of the statute must be evaluated not only by considering the consequences of the statute itself, but also by considering how the challenged statute may interact with the legitimate regulatory regimes of other States and what effect would arise if not one, but many or every, State

18

adopted similar legislation.  Generally speaking, the Commerce Clause protects against inconsistent legislation arising from the projection of one state regulatory regime into the jurisdiction of another State.  [Citation.]"  (*Healy*, *supra*, at pp. 336-337.)

As plaintiffs point out, the third proposition is of concern when the statute has an incidental rather than a direct impact on interstate commerce.  (See *Healy*, *supra*, 491 U.S. at pp. 336-337.)  As the high court explained in a case predating *Healy*, "[a]lthough the criteria for determining the validity of state statutes affecting interstate commerce have been variously stated, the general rule that emerges can be phrased as follows: Where the statute regulates even-handedly to effectuate a legitimate local public interest, and its effects on interstate commerce are only incidental, it will be upheld unless the burden imposed on such commerce is clearly excessive in relation to the putative local benefits.  [Citation.]"  (*Pike v. Bruce Church, Inc.* (1970) 397 U.S. 137, 142 (*Pike*).)  Thus, if a state statute regulates even-handedly to serve a local public interest but fails the *Pike* balancing test, it is invalid under the dormant commerce clause doctrine.

Here we are not concerned with the validity of a *state statute* under the dormant commerce clause doctrine.  As plaintiffs point out, they are *not* suing defendants under the Act, and nothing in the Act or its implementing regulations prohibits defendants from placing "CA CRV" or similar marks on beverage containers they sell both inside and outside of California.  But the relief plaintiffs seek by their complaint would require the superior court to (1) enjoin defendants from placing "CA CRV" or similar marks on all beverage containers they sell outside of California, and (2) require defendants to pay

19

money damages to plaintiffs as a result of defendants' sales, outside California, of beverage containers bearing "CA CRV" or similar marks.

There is no practical difference between the extraterritorial consequences of a state statute, and a court's issuance of an injunction or a damages award, because an injunction or damages award judgment may impermissibly burden interstate commerce as much as a state statute. "State power may be exercised as much by a jury's [or judge's] application of a state rule of law in a civil lawsuit as by a statute." (*BMW of North America, Inc. v. Gore* (1996) 517 U.S. 559, 572, fn. 17; *New York Times Co. v. Sullivan* (1964) 376 U.S. 254, 265 ["The test is not the form in which state power has been applied but, whatever the form, whether such power has in fact been exercised"]; *San Diego Building Trades Council, etc. v. Garmon* (1959) 359 U.S. 236, 247 ["[R]egulation can be as effectively exerted through an award of damages as through some form of preventative relief."].) Thus, "a statute or regulation is not necessary for asserting a dormant Commerce Clause claim[.]" (*Ileto v. Glock Inc.* (9th Cir. 2003) 349 F.3d 1191, 1217; *Haynes v. AMTRAK* (C.D. Cal. 2006) 423 F.Supp.2d 1073, 1083-1084 [negligence claim for damages based on California common law preempted by commerce clause]; *Kurns v. Railroad Friction Products Corp.* (2012) ___ U.S. ___ [132 S.Ct. 1261, 1269] [federal law may preempt "state common-law duties and standards of care"].) As defendants put it, it makes no difference whether they are "punished for marketing California-compliant [i.e., Act-compliant] products outside California through a specific statute . . . or through generally applicable tort liability. . . ."

Here, we conclude that the relief plaintiffs seek by their complaint—an injunction prohibiting defendants from placing "CA CRV" or similar marks on beverage containers sold outside California, and damages resulting from defendants' sales of beverage containers marked "CA CRV" or similarly outside of California—would violate the dormant commerce clause doctrine. We rely on two federal court cases holding similar Michigan and New York statutes invalid under the dormant commerce clause doctrine.

In *American Beverage Association v. Snyder* (6th Cir. 2013) 735 F.3d 362, the Sixth Circuit Court of Appeals held that a Michigan law prohibiting the sale outside Michigan of beverage containers bearing the Michigan redemption marking "impermissibly regulate[d] interstate commerce by controlling conduct beyond the State of Michigan." (*Id*. at p. 376.) The court explained that the Michigan statute "not only require[d] beverage companies to package a product unique to Michigan but also allow[ed] Michigan to dictate where the product [could] be sold" (*ibid*.), and none of the nine other states with beverage container deposit laws similarly attempted to "burden the beverage industry" by requiring state-specific packaging (*id*. at p. 375, fn. 6). The court recognized the "potential destruction of the national common market through the adoption of state-exclusive product laws" that would result if a state could prohibit the sale of state-compliant packaged goods in other states. (*Id*. at p. 376.)

In *International Bottled Water Association v. Paterson* (S.D.N.Y. May 29, 2009, Aug. 13, 2009, and Oct. 23, 2009) No. 09 Civ 4672) (DAB), the federal district court for the Southern District of New York preliminarily, then permanently, enjoined a New York

21

law prohibiting the sale outside New York of beverage containers bearing New York redemption markings. In its August 13, 2009, opinion addressing a proposed modification of its May 23, 2009, preliminary injunction, the district court observed that the parties did not dispute, and the court agreed, that the New York statute violated the dormant commerce clause doctrine.

Similarly here, plaintiffs' effort to use California tort law to prohibit defendants from selling in other states beverage containers that bear California redemption markings is invalid under the dormant commerce clause doctrine. As defendants point out, in seeking such an injunction and damages, plaintiffs "are wielding California tort law as a cudgel to punish (and thus prohibit) [defendants'] sale of the same products outside of California that are sold within it. That has the obvious practical effect of dictating to the Beverage Companies how their labels read in the other 49 States. Such cross-border commercial compulsion is precisely the type of extraterritorial effect that the Commerce Clause forbids." Indeed, if every state precluded out-of-state sales of their own "state-compliant" beverage containers—whether by statute, regulation, or judicial decision—defendants would be forced to manufacture and distribute 50 different types of containers in 50 different markets.

In sum, as defendants argued in the trial court, "the question at the end of the day is simply whether [p]laintiffs can hold [d]efendants liable under California law for activities that a California statute permits and the U.S. Constitution protects. That answer

22

is unequivocally, 'no,' and that is true no matter how [p]laintiffs might try to restate their allegations." For the reasons discussed, we agree.

## IV. DISPOSITION

The judgment of dismissal is affirmed. Defendants shall recover their costs on appeal. (Cal. Rule of Court, rule 8.278.)


KING
                                                                              J.


We concur:

RAMIREZ
                    P. J.

HOLLENHORST
                    J.


23

Filed 8/24/15

CERTIFIED FOR PUBLICATION

COURT OF APPEAL -- STATE OF CALIFORNIA

FOURTH DISTRICT

DIVISION TWO

| | |
|---|---|
| ALAMO RECYCLING, LLC et al., | E060392 |
| Plaintiffs and Appellants, | (Super.Ct.No. CIVRS1303347) |
| v. | |
| ANHEUSER BUSCH INBEV WORLDWIDE, INC. et al., | ORDER CERTIFYING OPINION FOR PUBLICATION |
| Defendants and Respondents. | |

THE COURT

A request having been made to this Court pursuant to California Rules of Court, rule 8.1120(a), for publication of a nonpublished opinion heretofore filed in the above entitled matter on July 23, 2015, and it appearing that the opinion meets the standard for publication as specified in California Rules of Court, rule 8.1105(c),

IT IS ORDERED that said opinion be certified for publication pursuant to California Rules of Court, rules 8.1105(b), 8.1105(c)(4), and 8.1105(c)(6). The opinion filed in this matter on July 23, 2015, is certified for publication.

KING _____
J.

I concur:

RAMIREZ _____
P. J.

1