Filed 10/22/24  P. v. Slusher CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## COURT OF APPEAL, FOURTH APPELLATE DISTRICT

## DIVISION ONE

## STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>LELAND SLUSHER,<br><br>    Defendant and Appellant. | D081443<br><br><br>(Super. Ct. No. SD102219) |

APPEAL from an order of the Superior Court of San Diego County, Theodore M. Weathers, Judge.  Affirmed.

Correen Ferrentino, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Charles C. Ragland, Assistant Attorney General, Collette C. Cavalier, Brian A. Segal, Kerry Ramos and Nora S. Weyl, Deputy Attorneys General, for Plaintiff and Respondent.

Appellant Leland Slusher appeals from an order denying his Penal Code[1] section 290.5 petition seeking termination from the sex offender registry in California. The superior court denied the petition because Slusher was not, in fact, registered in California. He was only registered in Arkansas, where he currently resides. At oral argument, Slusher's counsel informed us that he recently obtained termination relief in Arkansas. He maintains he is nevertheless entitled to an order effectively stating that *if* he ever returned to California he would not be required to register here.[2] He argues that reading section 290.5 as denying out-of-state residents such relief would be absurd, contrary to the legislative intent behind recent sex offender registry reform in this state, and violate various constitutional protections. For reasons we explain, we see no error or constitutional infirmity in the court's ruling and therefore affirm the order denying relief.

## FACTUAL AND PROCEDURAL BACKGROUND

In 1994, Slusher pleaded guilty to two counts of committing a lewd act upon a child. (§ 288, subd. (a).) At the time, California law required him to register as a sex offender for life as a consequence of this conviction. He registered with the San Diego Police Department when he was released from prison in 1998 and continued to do so until he left California in 2002. His work on oil refineries took him to several states in subsequent years, and he duly registered in those jurisdictions according to their respective mandates. In 2018, he settled in Arkansas, where state law required him to register as a sex offender because of his California conviction.

---

[1]     All further undesignated statutory references are to the Penal Code.

[2]     We assume without deciding that Slusher continues to have standing to pursue this appeal despite the fact that he is no longer subject to a registration requirement in any jurisdiction.

2

"Commencing January 1, 2021, Senate Bill No. 384 (2017–2018 Reg. Sess.) . . . restructured the sex offender registration requirement, establishing three tiers of registration for sex offenders, primarily based on the offense of conviction, for periods of at least 10 years (tier one), at least 20 years (tier two), and life (tier three). (Stats. 2017, ch. 541, § 2.5; see § 290, subd. (d).)" (*People v. Thai* (2023) 90 Cal.App.5th 427, 432.) Relevant here, committing a lewd act upon a child (§ 288, subd. (a)) is now designated a tier-two offense with a 20-year registration minimum. (§ 290, subd. (d)(2)(A).)

Senate Bill No. 384 also amended section 290.5 to allow individuals convicted of a tier one or tier two offense to seek termination from the registry following the expiration of their minimum registration period. (Stats. 2017, ch. 541, § 12; see § 290.5, subd. (a)(1).) The petition must be filed "in the superior court in the county in which the person is registered" and include "proof of the person's current registration as a sex offender." (§ 290.5, subd. (a)(1).) It must be served on the registering law enforcement agency; the district attorney in the county where the petition is filed; and, if different than the county where the petition is filed, the law enforcement agency and district attorney of the county of conviction. (*Id.*, subd. (a)(2).)

After the new law took effect, Slusher filed a petition under section 290.5 asking the San Diego Superior Court to terminate his duty to register in California since he had already been registered for more than 20 years. To his petition, Slusher attached documents confirming his registration in the State of Arkansas at the time. The People opposed the petition on the basis that Slusher had not (and could not) fulfill the filing and service requirements of section 290.5 as an out-of-state resident. They noted that Slusher was registered with local law enforcement in Arkansas, not the San Diego Police Department. The superior court requested briefing on the issue.

3

Slusher argued that the People's interpretation of section 290.5 was overly literal, in tension with "the larger statutory context" (i.e., § 290), inconsistent with the legislative intent behind the amended registration laws, and a violation of his constitutional rights. The People asserted that because Slusher was not registered in San Diego County (or any other county in California), the superior court lacked jurisdiction to consider his petition and he was statutorily ineligible for termination. They further argued that nothing about the statutory scheme was unconstitutional.

The superior court ultimately agreed with the People and summarily denied the petition. As the court reasoned, given the language of section 290.5 and relevant Arkansas law,[3] if Slusher "wished to terminate his obligation to register, then the appropriate jurisdiction would be Arkansas." Slusher appeals from that denial.

## DISCUSSION

### A. *California's Statutory Scheme for Sex Offender Registration*

We begin with some background regarding the statutory scheme governing registration of sex offenders in California. In 1947, section 290 created a mandatory lifetime registration requirement for defendants convicted of certain sex offenses "to assure that persons convicted of the crimes enumerated therein shall be readily available for police surveillance at all times because the Legislature deemed them likely to commit similar

---

[3] The superior court specifically referenced Arkansas Code Annotated section 12–12–919(b)(1)(A)(ii), which states: "After fifteen (15) years of having been registered as a sex offender in Arkansas, a sex offender sentenced in another state but permanently residing in Arkansas may apply for an order terminating the obligation to register in the circuit court of the county in which the sex offender resides or has last resided within this state."

offenses in the future." (*Barrows v. Muni. Court of L.A. Judicial Dist.* (1970) 1 Cal.3d 821, 825–826; *In re Alva* (2004) 33 Cal.4th 254, 264.)[4] The list is regulatory in nature, and not generally considered to be a form of punishment (*Alva*, at p. 264), although it undoubtedly imposes a " 'substantial' and 'onerous' burden" on registrants. (*Hofsheier*, *supra*, 37 Cal.4th at p. 1197.) Over time, the sex offender registry "acquired a second purpose: to notify members of the public of the existence and location of sex offenders so they can take protective measures." (*Id.* at p. 1196; see also § 290.46 [making information about registered sex offenders available to the public online].)

By 2017, however, California had the largest sex offender registry in the nation—exceeding 100,000 registrants—and was one of few states that still mandated lifetime registration regardless of the seriousness of the underlying offense or the risk of reoffending. (Sen. Com. on Public Safety, Analysis of Sen. Bill No. 421 (2017–2018 Reg. Sess.) Apr. 25, 2017, p. 6 (Senate Public Safety); Assem. Com. on Public Safety, Analysis of Sen. Bill No. 421 (2017–2018 Reg. Sess.) July 11, 2017, p. 8 (Assembly Public Safety)). The California Legislature recognized that the purpose of the sex offender registry was being undermined by a bloated list. In explaining the need for registration reform, the Legislature noted that local law enforcement spent an estimated 60–66 percent "of their resources dedicated for sex offender supervision on monthly or annual registration paperwork because of the large numbers of registered sex offenders on our registry." (Sen. Public Safety, *supra*, at p. 7.) Removing low-risk offenders from the registry would

---

[4] Apart from convictions triggering mandatory registration, judges also have discretion to add defendants convicted of other offenses to the list under certain circumstances. (*People v. Hofsheier* (2006) 37 Cal.4th 1185, 1197–1198 (*Hofsheier*); see also § 290.006 [authorizing discretionary registration].)

5

free up law enforcement to monitor high-risk offenders out in the community. (*Ibid.*) Furthermore, the public was "overwhelmed by the number of offenders displayed online in each neighborhood" and could not distinguish low-risk offenders from offenders who were "truly dangerous." (*Ibid.*)

The Legislature also realized that overbroad registration had significant negative impacts on registrants, their families, and their communities, including barriers to stable housing and employment, leading to homelessness, addiction, mental illness, and poverty. (Assem. Public Safety, *supra*, at p. 9.) Lifetime registration negatively affected the LGBTQ+ community in particular, as many individuals remained on the list for engaging in consensual same-sex contact at a time when that conduct was wrongly criminalized. (*Ibid.*) Creating a pathway off the registry was a step toward making "our system fairer and more just." (*Ibid.*)

Senate Bill No. 384 (originally introduced as Sen. Bill No. 421) (2017–2018 Reg. Sess.) aimed to remedy these issues by (1) replacing universal mandatory lifetime registration with a three-tier scheme where registrants are sorted according to the seriousness of their offense and their risk of reoffending, and (2) creating a process by which lower-level offenders can petition to terminate their registration upon completing their minimum registration period and satisfying other criteria. (Sen. Public Safety, *supra*, at pp. 7, 10.)

Currently, section 290 requires anyone who is convicted of a specified sex offense while living, working, or attending school in California to register with the chief of police of the city where they live, or the county sheriff if they live in an area without a police department, and, additionally, with the chief of campus police if they live on a college campus. (§ 290, subds. (b) & (c).)

6

Section 290, subdivision (d) describes the offenses and circumstances that determine which of the three tiers an offender will be placed into.

As mentioned above, section 290.5 allows a tier one or tier two offender to "file a petition in the superior court in the county in which the person is registered for termination from the sex offender registry . . . following the expiration of the mandated minimum registration period." (*Id.*, subd. (a)(1).) The termination petition must "contain proof of the person's current registration as a sex offender." (*Ibid.*) And the petition must be served "on the registering law enforcement agency and the district attorney in the county where the petition is filed and on the law enforcement agency and the district attorney of the county of conviction of a registerable offense if different than the county where the petition is filed." (*Id.*, subd. (a)(2).) The local law enforcement agency, in turn, must report receipt of the petition to the Department of Justice (DOJ), check if the petitioner has been convicted of any sex offenses in any other jurisdictions (see § 290.005), and report to the district attorney and the superior court whether the petitioner has satisfied the criteria for termination (see § 290, subd. (e)). (§ 290.5, subd. (a)(2).)

The district attorney may request a hearing if the petitioner has not fulfilled the requirements "or if community safety would be significantly enhanced by the person's continued registration." (§ 290.5, subd. (a)(2).) If no hearing is requested, the petition must be granted if the superior court finds: (1) the petition includes the required proof of current registration; (2) law enforcement has confirmed that the petitioner meets the criteria for termination (see § 290, subd. (e)); (3) there are no relevant charges pending against the petitioner; and (4) the petitioner is not in custody or on supervision. (§ 290.5.) Conversely, the court may summarily deny a petition if it finds that "the petitioner does not meet the statutory requirements for

7

termination of sex offender registration or if the petitioner has not fulfilled the filing and service requirements of this section." (*Id.*, subd. (a)(2).)

## B. *The Statutory Termination Procedure Does Not Apply to Slusher*

Slusher admits that he is not registered as a sex offender in California. He nevertheless insists that he is entitled to termination relief in San Diego County, where he was convicted and last registered before leaving the state decades ago.

The Third Appellate District recently considered the application of section 290.5 to out-of-state petitioners in *People v. Smyth* (2024) 99 Cal.App.5th 22 (*Smyth*). In that case, the defendant filed a section 290.5 petition in the Glenn County Superior Court, even though he currently lived and was registered in Oregon. (*Id.* at p. 25.) The superior court denied his petition because he was not registered in Glenn County or in California. (*Id.* at p. 27.) On appeal, the defendant "implicitly concede[d] the plain language of section 290.5 [did] not allow him to file a petition because he [was] not registered in any California county." (*Smyth,* at p. 27.) He instead argued that "precluding out-of-state residents from relief '[was] both absurd and contrary to the Legislature's intent in enacting the tiered system for registration relief.'" (*Id.* at p. 28.)

The Court of Appeal disagreed. (*Smyth*, *supra*, 99 Cal.App.5th at p. 28.) As the court reasoned, Senate Bill No. 384 "was designed to rectify problems with California's sex offender registry." (*Smyth,* at p. 29.) "Section 290.5 provides registrants relief from California's sex offender registration requirements and conserves local law enforcement resources. An out-of-state individual is already relieved of these requirements and does not require the expenditure of local law enforcement resources for monitoring." (*Smyth,* at p. 29.) In fact, the court added, allowing out-of-staters to file section 290.5

8

petitions would *increase* the burden on local law enforcement. (*Smyth,* at p. 29.)

We agree with the analysis in *Smyth.* By the plain terms of California's registration statutes, registration as a sex offender is required only while and for so long as a person is "residing in California" or "attending school or working in California." (§ 290, subd. (b).) The logic of the limitation is self-evident. California's primary interests in requiring registration are to protect *California* residents and assist *California* law enforcement personnel in performing their duties. (See generally *Medtronic, Inc. v. Lohr* (1996) 518 U.S. 470, 475 ["Throughout our history the several States have exercised their police powers to protect the health and safety of their citizens"]; *In re Jose C.* (2009) 45 Cal.4th 534, 555 [" The preservation of the safety and welfare of a state's citizenry is foremost among its government's interests"].) It has little reason to monitor individuals who are entirely outside California, i.e., persons who live, work, and/or attend school in other states.

It is for California registrants—that is, individuals who are currently registered with local law enforcement *in* California—that section 290.5 offers termination relief. It permits "[a] person who is required to register pursuant to [s]ection 290" to "file a petition in the superior court in the county in which the person is registered for termination from the sex offender registry . . . ." (§ 290.5, subd. (a)(1).) As Slusher is, admittedly, not registered in San Diego County (or any other California county), we agree with the superior court that he is ineligible for relief in that court (or any other superior court in this state).

Resisting this simple conclusion, Slusher primarily argues that section 290.5 does not expressly *prohibit* out-of-state residents from filing a petition, nor does it contain a residency requirement. But the absence of such

9

language in the statute does not mean it authorizes people registered *in other states* to seek relief in California. To the contrary, the fact that the statute does not extend relief to people who are registered in other states means they are *excluded*. (See *People v. Rowland* (1999) 75 Cal.App.4th 61, 66 [one maxim of statutory construction is "*expressio unius est exclusio alterius* (the expression of one thing is the exclusion of another)"].) And we cannot insert language into a statute that has been omitted. (*People v. Superior Court* (*Cheek*) (2023) 87 Cal.App.5th 373, 379.)

Slusher also suggests that construing section 290.5 as excluding out-of-state registrants from relief creates tension between sections 290 and 290.5. There is no tension. Section 290 requires individuals convicted of specified sex offenses who live, work, or attend school in California to register, and section 290.5 allows those who are registered in California to seek termination under certain circumstances. Because Slusher is not registered in California, there is no registry that a superior court in this state could order his termination from.[5]

Taking a broader perspective, Slusher asserts that precluding out-of-state registrants from seeking termination would frustrate the "obvious aim" behind Senate Bill No. 384, which was "to dramatically decrease the number of low-risk individuals on the state's registry." We reject this argument for the same reasons articulated in *Smyth, supra,* 99 Cal.App.5th 22.

---

[5] Slusher briefly mentions that, even though he lives in Arkansas now, he remains on the California DOJ's Sex Offender Registry. To our knowledge, however, there is nothing in the appellate record showing that Slusher is on any registry in this state. The Attorney General represents in his brief that Slusher does not appear on California's Megan's Law website (see § 290.46).

10

Essentially, offenders who are not registered in California do not contribute to the problems with the registry here. (See *id*. at pp. 28–29.)

Finally, we will not construe section 290.5 as allowing out-of-staters to seek an order stating they would not be required to register in California in the event they returned to this state. Expanding the petition process to anyone in the country who might, hypothetically, return someday would clearly frustrate the Legislature's goal of conserving local resources.

## C. *Denying Relief Does Not Violate Slusher's Constitutional Rights*

Anticipating that we might interpret the statute this way, Slusher alternatively contends that denying out-of-state registrants relief violates various constitutional guarantees. First, he relies on the equal protection clauses of the federal and state constitutions. (U.S. Const., 14th Amend.; Cal. Const., art 1, § 7, subd. (a); see also *Manduley v. Superior Court* (2002) 27 Cal.4th 537, 571–572 [the "equal protection provisions in the California Constitution 'have been generally thought in California to be substantially the equivalent of the equal protection clause of the Fourteenth Amendment to the United States Constitution' " (fn. omitted)].)

" 'At core, the requirement of equal protection ensures that the government does not treat a group of people unequally without some justification.' " (*People v. Hardin* (2024) 15 Cal.5th 834, 847 (*Hardin*).) Traditionally, "our cases have set out a two-part inquiry to evaluate equal protection claims." (*Id*. at p. 848.) " 'We first ask whether the state adopted a classification affecting two or more groups that are similarly situated in an unequal manner.' " (*Ibid*.) " 'If we deem the groups at issue similarly situated in all material respects, we consider whether the challenged

11

classification' is adequately justified." (*Ibid*.)[6] "In a case, like this one, subject to rational basis review, the question is 'whether the challenged classification ultimately bears a rational relationship to a legitimate state purpose.' " (*Ibid.*; see also *Legg v. Department of Justice* (2022) 81 Cal.App.5th 504, 511 ["Because sex offender registration does not implicate a suspect class or a fundamental right, rational basis review applies"].)

We are inclined to believe that Slusher's equal protection challenge fails at its inception. Slusher maintains that if interpreted to preclude his petition for relief, section 290.5 improperly distinguishes between offenders who remain in California and those who now live outside the state. But section 290.5 draws no such distinction. It is section 290, which creates the registration procedure, that draws a distinction by requiring registration only for persons who live, work, or attend school in California. And Slusher is certainly not suggesting that California was somehow obligated to require in-state registration for all persons convicted in California, regardless of their current residence or location. Section 290.5 offers termination relief to the same group burdened with registration—namely, offenders in California.

In any event, even if we were to assume that section 290.5 discriminated against persons outside of California, there is no equal protection violation. As discussed above, the Legislature made clear that it amended the sex offender registration scheme—including sections 290 and

---

6    The Supreme Court recently clarified that, in cases involving "challenges to classifications appearing on the face of the law," courts do not need to analyze whether the two groups are similarly situated. (*Hardin*, *supra*, 15 Cal.5th at pp. 850–851.) They may skip to step two and determine "whether the challenged difference in treatment is adequately justified under the applicable standard of review." (*Ibid.*) In such cases, the "similarly situated" test is duplicative and unnecessary. (*Id*. at p. 849.) In other types of cases, however, the test may still be useful. (*Id*. at p. 851.)

290.5—in order to prune the registry in this state so that local law enforcement could focus its resources on high-risk offenders, the public could meaningfully discern which offenders posed potential danger, and low-risk offenders who had successfully registered for years could be freed from the burdens of registration. (See Sen. Public Safety, *supra*, at p. 7; Assem. Public Safety, *supra*, at p. 9.) These are legitimate state interests. (See, e.g., *People v. Chatman* (2018) 4 Cal.5th 277, 290 [preserving government resources is a legitimate state interest]; *People v. Perez* (2001) 86 Cal.App.4th 675, 678 ["an increase in public safety is a legitimate state interest"].)

And we easily conclude that limiting section 290.5 relief to in-state registrants is reasonably related to these interests. Offenders who are not registered in California do not contribute to the problems identified by the Legislature as stemming from the state's bloated registry. (Accord, *Smyth*, *supra*, 99 Cal.App.5th at p. 30 ["allowing only California registrants to petition to terminate their California registration is reasonably related to the state's interests in preserving its own law enforcement resources and focusing those resources on public safety in California"].)

Second, Slusher argues that interpreting section 290.5 as extending relief to in-state but not out-of-state registrants contravenes the privileges and immunities clause of the federal constitution, which guarantees to the citizens of each state all the privileges and immunities of citizens in any other state. (U.S. Const., art IV, § 2, cl. 1.) This clause was designed to place " ' "the citizens of each State upon the same footing with citizens of other States, so far as the advantages resulting from citizenship in those States are concerned." ' " (*McBurney v. Young* (2013) 569 U.S. 221, 226 (*McBurney*).) But this does not mean "that 'state citizenship or residency may never be used by a State to distinguish among persons.' " (*Ibid.*) " 'Nor must a State

13

always apply all its laws or all its services equally to anyone, resident or nonresident, who may request it so to do.' " (*Ibid.*) Rather, the high court has "long held that the Privileges and Immunities Clause protects only those privileges and immunities that are 'fundamental.' " (*Ibid.*)

Slusher claims that denying him section 290.5 relief on the ground that he is not registered in this state burdens his fundamental right to access the courts here. To be sure, access to the courts is a fundamental right for purposes of the privileges and immunities clause. (*McBurney, supra,* 569 U.S. at p. 231.) But section 290.5 does not deny citizens of other states " 'reasonable and adequate' " access to California courts. (*McBurney*, at p. 231.) Indeed, Slusher was able to file and obtain a decision on his petition here. The problem is that the petition procedure Slusher seeks to invoke is designed to allow termination of a registration requirement that, by its terms, does not apply to him. What Slusher really wanted—at least at the time he filed his petition—was for California courts to terminate *Arkansas's* registration requirement based on his California conviction, and that is a matter for the Arkansas courts to address based on Arkansas law. (See *ibid.* [" 'the constitutional requirement is satisfied if the non-resident is given access to the courts of the State upon terms which in themselves are reasonable and adequate for the enforcing of any rights he may have, even though they may not be technically and precisely the same in extent as those accorded to resident citizens' "].)

To the extent Slusher impliedly suggests that the unavailability of section 290.5 relief to out-of-state offenders creates a disincentive to leave California, and thus indirectly burdens the right to travel, he is mistaken. As in *People v. Parker* (2006) 141 Cal.App.4th 1297, there is no impediment to Slusher's right to travel to other states. "He retained and exercised his

14

right to travel among the states and reside in a state of his own choosing." (*Id.* at p. 1307.) Moreover, he is always free to return to California, subject himself to the registration requirements of section 290, and then seek termination under section 290.5.

Finally, even assuming section 290.5 in some way impinged on Slusher's fundamental rights, we would not invalidate the statute. The privileges and immunities clause "does not preclude disparity in treatment where substantial reasons exist for the discrimination and the degree of discrimination bears a close relation to such reasons." (*Supreme Court of Va. v. Friedman* (1988) 487 U.S. 59, 67.) As we have explained, the Legislature sought to pare down the sex offender registry in California so that it would be more useful to law enforcement and the public, and to give a chance for termination to low-risk offenders who had successfully registered for years. The Legislature necessarily limited the opportunity for relief to those who are, in fact, on the registry in this state.

In sum, we agree with the superior court that Slusher needed to pursue termination where he was registered, which was in Arkansas, not California. Although he initially believed he could not obtain relief in Arkansas until he first secured it in California, that was not the case. As we learned at oral argument, he has now apparently achieved in that state the primary goal he ultimately sought.

## DISPOSITION

The order denying the section 290.5 petition is affirmed.

DATO, J.

WE CONCUR:

McCONNELL, P. J.

RUBIN, J.